[813 NYS2d 385]

Lincoln Life and Annuity Company of New York, as Administrator of Aetna Life Insurance and Annuity Company, Respondent, v Benjamin Caswell, Appellant, and Regina W. Hubbard et al., Respondents.

First Department, April 11, 2006

2

APPEARANCES OF COUNSEL

*Joseph H. Gruner*, New York City (*Ronald Cohen* of counsel), for appellant.

*L'Abbate, Balkan, Colavita & Contini, L.L.P.*, Garden City (*Robert A. Maloney* and *Monte E. Sokol* of counsel), for Lincoln Life and another, respondent.

*Eliot Spitzer, Attorney General*, New York City (*Jean Lin, Michael S. Belohlavek* and *Mark Jensen* of counsel), for Eliot Spitzer and others, respondents.

**OPINION OF THE COURT**

FRIEDMAN, J.

In *McCarthy v Aetna Life Ins. Co.* (92 NY2d 436 [1998]), the

Court of Appeals held that, where a life insurance policy sets forth a procedure for changing beneficiaries and does not authorize making such a change by will, a general testamentary statement in the insured's will does not override a prior designation of the policy beneficiary that was made in the manner provided by the policy. This appeal requires us to decide which instrument controls—the will or the prior beneficiary designation made in accordance with the terms of the policy—where, unlike *McCarthy*, the will *specifically* identifies the policy in question and purports to require a disposition of its proceeds inconsistent with the beneficiary designation under the policy. We hold that, under these circumstances, the purported testamentary disposition of the policy proceeds does not constitute "substantial compliance" with the policy and, therefore, cannot be given effect over the policy's beneficiary designation. As in *McCarthy*, this result is not affected by the insurance company's waiver of "strict compliance" with the policy terms by its commencement of an interpleader action to adjudicate among the conflicting claims to the policy proceeds.

There is no dispute as to the material facts. In April 1985, Aetna Life Insurance and Annuity Company (Aetna) issued policy No. U1179854, a life insurance policy in the face amount of $200,000 (the '854 policy), to Martha L. Hubbard (hereinafter, the insured). The '854 policy provides that, to change the beneficiary, "[a] signed request must be sent to Aetna. When Aetna gives its written acceptance, the change will take effect as of the date the request was signed."

On two occasions, the insured changed the beneficiary designation in the manner provided by the '854 policy. Her last such change was made by a signed request dated October 9, 1987. That request, made on a printed form Aetna provided for the purpose, designated the insured's son, Robert W. Hubbard, Jr., as primary beneficiary, and defendant Bennie Caswell, Jr. (sued herein as Benjamin Caswell), as contingent beneficiary. Aetna's acceptance of that request is dated October 27, 1987. Since Robert W. Hubbard, Jr. predeceased the insured, giving effect to the October 1987 beneficiary designation would make Caswell the sole beneficiary of the '854 policy.

More than 15 years after she filed the October 1987 beneficiary designation with Aetna, the insured executed a last will and testament, dated June 16, 2003. This will specifically refers to the '854 policy by number, and purports to "devise and bequeath" portions of the proceeds of that policy to various individuals and charities. It appears that the will purports to

leave Caswell only $25,000 of the proceeds of the '854 policy. There is no indication that the insured ever took any steps to have the legatees of the '854 policy under the will designated as beneficiaries of the policy in the manner provided by the policy itself.

The insured died on May 17, 2004, and her will of June 2003 has been filed in probate proceedings in Surrogate's Court. In June 2004, Caswell and the nominated executors of the insured's estate, by their respective attorneys, sent letters to the insurance company asserting conflicting claims to the proceeds of the '854 policy. Thereafter, plaintiff Lincoln Life and Annuity Company of New York, as Aetna's administrator, in accordance with CPLR 1006, commenced this interpleader action in the Supreme Court, Bronx County, seeking to be discharged of its obligations under the policy while allowing the competing claims to the proceeds to be resolved among the interested parties. The defendants named in the amended interpleader complaint are Caswell, the preliminary executors of the insured's estate, the various individual and charitable legatees of the '854 policy under the will, and the Attorney General, as statutory representative of the charitable legatees. Plaintiff admits that the '854 policy's death benefit is now due and owing, but takes no position on the question of whether such payment should be made to Caswell alone, pursuant to the October 1987 beneficiary designation, or, alternatively, to the executors of the insured's estate for disposition in accordance with the June 2003 will.

Although Caswell's answer is not set forth in the record, it appears that he asserted a counterclaim seeking an order directing plaintiff to pay over the proceeds of the '854 policy to him. In January 2005, Caswell moved for summary judgment on his counterclaim. Plaintiff cross-moved for an order, pursuant to CPLR 1006 (f), permitting it to pay the proceeds of the policy into court, discharging it from any further liability under the policy, and awarding it costs, disbursements and reasonable attorneys' fees.

By order entered on or about March 7, 2005, the motion court denied Caswell's summary judgment motion, based on the court's view that the dispositive consideration was the insured's intent, as to which, the court opined, there exists a triable issue of fact. The same order granted plaintiff's cross motion insofar as it sought permission to pay the policy proceeds into court and a discharge upon so doing. The branch of plaintiff's cross

motion seeking an award of costs, disbursements and reasonable attorneys' fees was granted to the extent of setting the matter down for a framed issue hearing. On Caswell's appeal, we now modify to grant Caswell's summary judgment motion to the extent of declaring him the sole beneficiary of the '854 policy, and otherwise affirm.

As the Court of Appeals stated in *McCarthy v Aetna Life Ins. Co.* (92 NY2d 436 [1998], *supra*), the general rule is that "the method prescribed by the insurance contract must be followed in order to effect a change of beneficiary" (*id.* at 440 [citations omitted]). As a corollary of this rule, it has long been recognized that, unless an insurance policy permits the beneficiary to be designated or changed by will, even a specific testamentary bequest of the policy proceeds generally will not override a prior beneficiary designation made in accordance with the terms of the policy (*see Fink v Fink*, 171 NY 616, 625 [1902]; *Matter of Jaccoma*, 142 AD2d 875, 876-877 [1988], *lv denied* 73 NY2d 703 [1988]; *Pruchnowski v Prudential Ins. Co. of Am.*, 242 App Div 899 [1934], *affd* 270 NY 530 [1936]; *Matter of Ziolkowski*, 47 Misc 2d 752, 753-754 [Sur Ct, Erie County 1965]; *Ralph v Equitable Life Assur. Soc. of U.S.*, 46 NYS2d 957, 959 [Sup Ct, Kings County 1944]).

Over the years, there has been some relaxation of the requirement of strict compliance with the procedures specified by an insurance policy for designating or changing beneficiaries. At first, it was held that "exact compliance with the provisions of the policy [would be excused] where the attempt at such compliance has been substantial and its full success prevented by some cause not within the control of the person attempting to make the change" (*Schoenholz v New York Life Ins. Co.*, 234 NY 24, 29-30 [1922] [citations omitted]).[1] As the law has evolved, the courts, recognizing that a primary purpose of specifying a procedure for changing beneficiaries is to protect the insurer from double liability, have come to hold that exact compliance with

---

1. For example, a change of beneficiary has long been given effect, notwithstanding a failure to complete the procedure specified by the policy, where the insured died while in the process of making the change in accordance with the contractual procedure (*see Luhrs v Luhrs*, 123 NY 367 [1890]; *Greenfield v Massachusetts Mut. Life Ins. Co.*, 253 App Div 51 [1937]; *Matter of Farnam*, 232 App Div 598 [1931]), or was prevented from completing the contractual procedure by the originally designated beneficiary's refusal to surrender the policy for the insurer's required endorsement (*see Lahey v Lahey*, 174 NY 146 [1903]; *Levy v New York Life Ins. Co.*, 238 App Div 711 [1933], *affd* 266 NY 570 [1935]).

the contractual procedure will be deemed waived where the insurer, faced with conflicting colorable claims to the same policy proceeds, pays the proceeds into court in an interpleader action so that the opposing claimants may litigate the matter between themselves (*see McCarthy*, 92 NY2d at 442 [noting that "the insurer who has brought the proceeds of the policy into court and requested the court to adjudicate the rights of contesting claimants may no longer insist upon strict compliance"]; *Cable v Prudential Ins. Co. of Am.*, 89 AD2d 636, 636 [1982] ["strict compliance" with the policy's requirements for effecting a change of beneficiaries was "unnecessary" where the insurer had "paid the proceeds of the policy into the court leaving the parties to settle the controversy between themselves"]).

Although an interpleading insurer is deemed, by paying the policy proceeds into court, to waive exact compliance with the policy's procedures for changing beneficiaries, the question is still not purely one of the insured's intent. Rather, "[t]here must be an act or acts designed for the purpose of making the change, though they may fall short of accomplishing it. Mere intent is not enough" (*Aetna Life Ins. Co. v Sterling*, 15 AD2d 334, 335 [1962], *affd* 11 NY2d 959 [1962] [designation of beneficiary for new policy did not change beneficiary of old policy that was still in effect when insured died]; *see also Cook v Aetna Life Ins. Co.*, 166 AD2d 895, 896 [1990] [insured's alleged statements of intent to change beneficiary were not a sufficient basis for giving effect to such change]; *Cable v Prudential Ins. Co. of Am.*, 89 AD2d at 636 [change given effect where insured failed only to send the policy to the insurer for endorsement, but otherwise followed the procedure set forth in the policy]; *Hunnell v Hunnell*, 45 AD2d 521, 523 [1974], *affd* 37 NY2d 931 [1975] [to same effect as *Cook*]). Thus, the controlling consideration as to whether a change of beneficiary has been effectuated in such cases is whether there has been "*substantial compliance with the terms of the policy*" (*McCarthy*, 92 NY2d at 440 [emphasis added and citation omitted]; *see John Hancock Mut. Life Ins. Co. v McManus*, 247 AD2d 513, 513, 514 [1998] ["the insured did not substantially comply with the requirements of her life insurance policies in order to effectuate a change of beneficiary" where, after the insurer advised her that her initial change-of-beneficiary form was unacceptable and sent her a new form, "she failed to fill out and return the new form in the month before her death, even though completion of the new form was within her power to accomplish"]; *Connecticut Gen.*

*Life Ins. Co. v Boni*, 48 AD2d 621 [1975], *appeal dismissed* 37 NY2d 917 [1975] [there was no "triable issue concerning decedent's attempted substantial compliance" where the change-of-beneficiary form he executed 11 years before his death was never delivered to the insurer]). Obviously, as the law has developed, it still seeks to encourage compliance with the requirements of the policy for changing beneficiaries.

Against the foregoing legal background, the dispositive question that emerges in this case is whether the insured's specific testamentary disposition of the '854 policy in her will can be deemed to constitute "substantial compliance" with that policy's requirements for effecting a change of beneficiary. Our answer to this question is "no." Although the will may constitute some evidence of the insured's subjective intentions, the making of the will plainly was not an attempt to comply with the simple change-of-beneficiary procedure set forth in the '854 policy. So far as the record shows, in the 16½ years the insured lived after effecting the October 1987 change of beneficiary, she did nothing at all that could be characterized as an attempt to comply with the change-of-beneficiary procedure required by the policy, which, again, was simply to send the insurer a signed request—a procedure the insured herself had followed twice before she executed her will. Nor is there any evidence that the insured was "physically or mentally incapable of attempting to substantially comply with the requirements of the policy" (*McCarthy*, 92 NY2d at 441-442).

We recognize that at least two reported pre-*McCarthy* Surrogate's Court decisions have given effect to a specific testamentary bequest of an individual retirement account as a change of the beneficiary, although the bequest did not comply with the contractual requirements for effectuating such a change (*see Matter of Trigoboff*, 175 Misc 2d 370 [Sur Ct, NY County 1998]; *Matter of Morse*, 150 Misc 2d 415 [Sur Ct, NY County 1991]). In both *Trigoboff* and *Morse*, the court deemed the custodian of the account to have waived the contractual requirements for effecting a change of beneficiary, thereby rendering the question (in those courts' views) purely one of the decedent's intent (*see Trigoboff*, 175 Misc 2d at 373; *Morse*, 150 Misc 2d at 418). In the life insurance context, we do not believe that this position continues to be tenable in light of the Court of Appeals' *McCarthy* decision. *McCarthy*, after all, specifically rejected the view "that the requirement of substantial compliance with the requirements of the insurance policy is waived where . . . the

insurance company becomes a stakeholder in an interpleader action" (92 NY2d at 442).[2] In this regard, we note that the policy consideration the *McCarthy* court invoked in support of its holding that a general testamentary statement in a will does not constitute substantial compliance—avoiding uncertainty on the part of the insurers that could lead to the delay of payment on life insurance policies (*id.* at 441, citing *Stone v Stephens*, 155 Ohio St 595, 600-601, 99 NE2d 766, 769 [1951])—applies as much to specific testamentary bequests as to general testamentary statements.

In view of the foregoing, Caswell's motion for summary judgment should have been granted to the extent of declaring him the sole beneficiary of the '854 policy. Plaintiff did, however, act appropriately in bringing this interpleader action in the face of the conflicting demands made upon it for payment of the policy proceeds, neither of which was "patently without substance" (*Connecticut Gen. Life Ins. Co. v Boni*, 48 AD2d at 621, quoting *Boden v Arnstein*, 293 NY 99, 103 [1944]). Plaintiff, as an insurance company rather than a court, was entitled to avail itself of the interpleader mechanism for the purpose of discharging its obligations under the policy while affording the interested parties an opportunity to litigate the dispute between themselves. Accordingly, Caswell was not entitled to an order directing plaintiff to pay the proceeds directly to him, and Supreme Court correctly granted plaintiff's cross motion insofar as it sought permission to pay the proceeds into court and a discharge pursuant to CPLR 1006 (f).

Finally, the motion court did not improvidently exercise its discretion under CPLR 1006 (f) in ordering a framed issue hearing on plaintiff's claim for costs, disbursements and reasonable attorneys' fees (*see e.g. American Intl. Life Assur. Co. of N.Y. v Ansel*, 273 AD2d 421, 422 [2000], citing *Republic Natl. Bank of N.Y. v Lupo*, 215 AD2d 467, 468 [1995]; *see also* Siegel, NY Prac § 149, at 258 [4th ed]; Commercial Litigation in New York State Courts § 16:11, at 1004 [2 West's NY Prac Series 2d ed]). We hasten to add that, in determining "such terms relating to payment of expenses, costs and disbursements as may be just"

---

**2.** In light of *McCarthy*, it appears that *Kane v Union Mut. Life Ins. Co.* (84 AD2d 148 [1981]) is no longer good law to the extent it stands for the proposition that, where the insurer has become a stakeholder of policy proceeds alleged to have been disposed of by will, the issue is simply "whether the will of the decedent 'clearly manifested [his] intent' to change the beneficiaries of the . . . policy in question" (*id.* at 154, quoting *Franklin Life Ins. Co. v Mast*, 435 F2d 1038, 1043 [9th Cir 1970]).

(CPLR 1006 [f]), Supreme Court should bear in mind that any award of attorneys' fees should be limited, given that plaintiff has no interest in the underlying dispute and has been required to establish only its entitlement to interpleader relief as a neutral stakeholder. Any further discussion of this issue should await Supreme Court's determination after the framed issue hearing (should an appeal be taken from that determination), when a fuller record will be available for review. We do not perceive a need to set forth more specific guidelines for Supreme Court in advance of the hearing.

Accordingly, the order of the Supreme Court, Bronx County (Mary Ann Brigantti-Hughes, J.), entered on or about March 7, 2005, which denied defendant Caswell's motion for summary judgment on his counterclaim, granted plaintiff's cross motion for leave to deposit into court the proceeds of policy No. U1179854, issued by Aetna Life Insurance and Annuity Company to Martha L. Hubbard, deceased, discharged plaintiff from any liability under such policy, and granted the branch of plaintiff's cross motion seeking costs, disbursements and reasonable attorneys' fees to the extent of setting the matter down for a framed issue hearing, should be modified, on the law, to grant Caswell's motion for summary judgment to the extent of declaring him the sole beneficiary of the subject insurance policy, and otherwise affirmed, without costs.

McGuire, J. (concurring). I agree that this case is controlled by *McCarthy v Aetna Life Ins. Co.* (92 NY2d 436 [1998]), and that Caswell's motion for summary judgment should have been granted to the extent of declaring him the sole beneficiary of the '854 policy. I agree as well that given the conflicting claims to the policy proceeds, plaintiff properly commenced this interpleader action and sought to be discharged of its obligations under the policy. Although I also agree that the branch of plaintiff's cross motion seeking costs, disbursements and reasonable attorneys' fees under CPLR 1006 (f) was properly granted to the extent of setting the matter down for a framed issue hearing, I believe plaintiff's claim therefor warrants additional discussion.

In directing an award of expenses, costs and disbursements "as may be just," CPLR 1006 (f) makes plain that the matter is committed to the sound discretion of the court (*see also Fischbein, Badillo, Wagner v Tova Realty Co.*, 193 AD2d 442, 444-445 [1993]). The statutory language, moreover, contemplates that

all relevant facts and circumstances are to be considered. Although the majority recognizes that "any award of attorneys' fees should be limited," it provides no guidance to Supreme Court with respect to the factors which should inform its discretion. Indeed, the majority notes only what is true in all cases in which an interpleader action properly is commenced: "that plaintiff has no interest in the underlying dispute and has been required to establish only its entitlement to interpleader relief as a neutral stakeholder." In addition, the majority's writing is ambiguous on the question of whether some award of attorneys' fees is required. In my judgment, that question should be answered with an unequivocal "no," and at least a modicum of guidance is warranted. Regardless of whether "more specific guidelines" are necessary to the resolution of this appeal, they unquestionably are appropriate. The majority provides virtually no guidance and does not cite a single decision of this Court or any other court that provides any.

In the first place, not all stakeholders forced to participate in disputes in which they are disinterested have the same equitable claim to recover their costs, disbursements and reasonable attorneys' fees. In this regard, the decision by the Second Circuit Court of Appeals in *Travelers Indem. Co. v Israel* (354 F2d 488 [1965]), construing the analogous federal interpleader statute (28 USC § 1335), is instructive. There, insurance companies brought an interpleader action to resolve competing claims to liability on five fire insurance policies, four of the insurers contending on appeal that they should have been awarded costs and counsel fees "because they were disinterested stakeholders who brought the interpleader solely for the benefits of claimants" (354 F2d at 490). After noting that interpleader was an "equitable remedy . . . devised by the chancellors" (*id.*), Judge Friendly rejected their claim:

> "We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business [to] their insureds by bringing an action for interpleader. Denial of allowances in this case was by no means an abuse of discretion" (*id.*).

In *Travelers Ins. Co. v Estate of Garcia* (2003 WL 1193535, *5, 2003 US Dist LEXIS 2828, *13 [ED NY 2003]), the court upheld the insurer's claim for costs and attorneys' fees, stressing the "unique problems" with which the insurer was confronted.

Significantly, however, the court made clear that such an award hardly was to be granted as a matter of course:

> "Usually, courts need not award attorneys' fees in interpleader actions where the fees are expenses incurred in the ordinary course of business. *See Correspondent Servs. Corp. v. J.V.W. Investments Ltd.,* 204 F.R.D. 47, 49 (S.D.N.Y.2001). This is particularly true in the case of insurance companies, where minor problems that arise in the payment of insurance policies must be expected and the expenses incurred are part of the ordinary course of business. *Travelers Indem Co. v. Israel,* 354 F.2d 488, 490 (2d Cir.1965)" (2003 WL 1193535, *5, 2003 US Dist LEXIS 2828, *12-13; *see also Commercial Union Life Ins. Co. of N.Y. v Almonor,* 1999 WL 292562, *1, 1999 US Dist LEXIS 6857, *4 [SD NY 1999] ["The ordinary cost of doing business in the life insurance industry must reflect the need for interpleader actions in some cases. Because this interpleader action was relatively simple and plaintiff has not submitted any reason why the costs of this interpleader action have exceeded the ordinary cost of doing business, plaintiff's motion for attorney(s') fees is denied"]).

*Merrimack Mut. Fire Ins. Co. v Moore* (91 AD2d 759 [1982]) provides additional guidance. There, the Third Department held that the trial court did not abuse its discretion in denying the stakeholder's motion for attorneys' fees, costs and disbursements, given that it had been dilatory in commencing the action (*id.* at 761). This conclusion is consonant with the equitable origins of interpleader relief and the venerable maxim that "[h]e who seeks equity must do equity" (*Langel v Betz,* 250 NY 159, 162 [1928]). That is not to say, of course, that the absence of dilatory conduct or other fault requires that a successful stakeholder be given relief under CPLR 1006 (f). From the premise that a motion for that relief can be denied on the basis of dilatory conduct or other fault, it scarcely follows that the motion must result in an actual award whenever there is no dilatory conduct or other fault.

A determination that the stakeholder properly brought the interpleader action and should be discharged from liability in whole or in part, in my judgment, is a necessary but not a sufficient condition for an award of costs, disbursements and

reasonable attorneys' fees under CPLR 1006 (f). A showing by the stakeholder that it has done no wrong establishes only that it has cleared one hurdle potentially barring its eligibility for this equitable remedy. Clearing a hurdle, of course, is not the same as reaching the finish line. In exercising their discretion on the basis of all relevant facts and circumstances, trial courts reasonably may conclude in particular cases that successful stakeholders who have done no wrong should not receive any award or an award of some expenses, costs and disbursements, with or without all or some reasonable attorneys' fees.[1]

Whether plaintiff should in fact be awarded any expenses, costs or disbursements, including any attorneys' fees, cannot, of course, be determined on the present record. However, because the statute directs that the court "*shall* impose such terms relating to payment of expenses, costs and disbursements as may be just" (CPLR 1006 [f] [emphasis added]), Supreme Court did not err in according plaintiff an opportunity at a framed issue hearing to attempt to make its case. At that hearing, Supreme Court should be able to take into account, among other things, the less than compelling nature of the executors' claims to the policy's proceeds.[2]

TOM, J.P., MAZZARELLI and CATTERSON, JJ., concur with FRIED-MAN, J.; McGUIRE, J., concurs in a separate opinion.

---

1. To take a perhaps extreme example, it surely would not be an abuse of discretion for a trial court to decline to award any attorneys' fees in a case in which the amount of the otherwise reasonable attorneys' fees sought by a successful insurer-stakeholder that did no wrong represents a large percentage of the amount of the disputed policy proceeds, the adverse claim prompting the interpleader action was of dubious merit and the attorneys handling the matter were employees of the insurer.

2. I recognize that in *McCarthy* the Court of Appeals was not confronted with the exact issue presented in this case—whether to give effect to a specific testamentary disposition of insurance policy proceeds that is inconsistent with the actual beneficiary designation under the policy. As the majority persuasively demonstrates, however, the result in this case is essentially dictated by the rationale in *McCarthy*. Without prejudging the outcome of the framed issue hearing, and despite Supreme Court's denial of Caswell's motion for summary judgment declaring him the sole beneficiary of the policy, it well may be reasonable to conclude that the claims of the executors presented plaintiff only with the kind of "minor problem[ ] that arise[s] in the payment of insurance policies" that "must be expected" and which causes expenses to be incurred that "are part of the ordinary course of business" (*Travelers Ins. Co. v Estate of Garcia*, 2003 WL 1193535, * 4, 2003 US Dist LEXIS 2828, *13).

Order, Supreme Court, Bronx County, entered on or about March 7, 2005, modified, on the law, to grant defendant Caswell's motion for summary judgment to the extent of declaring him the sole beneficiary of the subject insurance policy, and otherwise affirmed, without costs.