In the Matter of the Estate of Juliana Sharp, Deceased. Honey Sharp Lippman, Formerly Known as Joan Larson Sharp, Appellant-Respondent; Lee Sharp, Formerly Known as Levon Moumdjian, Respondent-Appellant. [889 NYS2d 323]—

Stein, J.

Juliana Sharp (hereinafter decedent) died in September 2002 leaving two surviving children, petitioner and respondent.[1] At the time of her death, decedent was the income beneficiary of two trusts established for her benefit by her late husband. One of those trusts provided decedent with a general power of appointment.[2] In order for respondent to inherit any portion of the trust corpus, it was necessary for decedent to exercise the trust power of appointment. In the event of a failure to exercise the power of appointment, the remainder was to be paid to the living children "born to the union of trustor and [decedent]." In 2003, respondent produced the following five wills of decedent: a holographic will dated July 21, 2001; a copy of a will dated February 2, 1979; a copy of a will dated January 14, 1977; an original will dated March 29, 1974; and a copy of a will dated November 9, 1972. All of the wills except the 2001 holographic will were prepared under the supervision of an attorney and each will purported to, among other things, exercise the trust power of appointment and expressly revoked all prior wills.

1. Petitioner is the biological daughter of decedent and decedent's late husband, the trust creator. Respondent was adopted by decedent as an adult.

2. The other trust is not at issue in this appeal.

In January 2004, petitioner commenced a proceeding seeking probate of the 1974 will and respondent filed objections thereto. Other proceedings ensued during which, as is pertinent here, Surrogate's Court denied respondent's request to probate the 1979 will.[3] In 2007, petitioner commenced this proceeding seeking letters of administration, and subsequently moved to dismiss respondent's objections to that petition. Surrogate's Court, among other things, admitted the 1974 will to probate and denied petitioner's request for letters of administration. Petitioner appeals from each and every part of the order of Surrogate's Court and respondent cross-appeals from so much thereof as admitted decedent's 1974 will to probate.

Initially, we note that, inasmuch as petitioner obtained the relief requested in her January 2004 petition—that is, the admission to probate of decedent's 1974 will—she is not aggrieved and may not appeal from that portion of the order of Surrogate's Court (*see* CPLR 5511; *Parochial Bus Sys. v Board of Educ. of City of N.Y.*, 60 NY2d 539, 544-545 [1983]).[4] Nonetheless, since respondent also argues that Surrogate's Court improperly granted the petition to probate the 1974 will, we must address that issue.

In deciding whether to dismiss respondent's objections to the petition for letters of administration, Surrogate's Court was required to determine whether any of the wills proffered by respondent were valid or whether decedent died intestate (*see* SCPA 1002 [2]). In his objections, respondent alleged, generally, that decedent "did not die intestate but died testate leaving a valid Last Will and Testament." However, he did not specify which of decedent's wills was valid. Instead, respondent argued that Surrogate's Court was required to "hear and determine the application of the Doctrine of Dependent Relative Revocation with respect to the sequence of [w]ills made by the decedent before determining that decedent died intestate."

"The doctrine [of dependent relative revocation] may be simply stated by saying that where the intention to revoke [a will] is conditional and where the condition is not fulfilled, the revocation is not effective" (*Matter of Macomber*, 274 App Div

---

**3.** Respondent's appeal from that order was dismissed by this Court by order dated January 25, 2007.

**4.** The record does not support petitioner's contention that she abandoned her petition to probate the 1974 will by commencing a proceeding for the appointment of letters of administration. Rather, the petition for letters of administration merely contains a request that the petition for probate be suspended during the pendency thereof. The record contains no evidence that such request was ever addressed.

724, 725 [1949]). The doctrine "is usually applied where the testator cancels a will with a present intention to make a new testamentary disposition, and the new disposition is not made, or if made, fails of effect for some reason" (*id.* at 725). It is, thus, "a rule of interpretation of intention . . . [that] seeks to avoid intestacy where a will has once been duly executed and the acts of the testator in relation to its revocation seem conditional or equivocal" (*id.* at 727).

Here, in admitting the 1974 will to probate, Surrogate's Court applied the doctrine and determined that decedent's intention that the 1979 will be revoked by the 2001 will was conditioned upon the validity of the 2001 will. Since the 2001 will was not properly executed, Surrogate's Court concluded that revocation of the 1979 will was not effective. However, inasmuch as only a copy of the 1979 will was produced and the original had been in decedent's possession but could not be located, that will could not be admitted to probate (*see* SCPA 1407; *Matter of Fox*, 9 NY2d 400, 407 [1961]; *Matter of Philbrook*, 185 AD2d 550, 552 [1992]). Therefore, Surrogate's Court proceeded to apply a similar analysis to the 1977 and 1974 wills. After determining that the 1977 will could not be admitted to probate for the same reason as the 1979 will, Surrogate's Court concluded that, since the 1974 will was an original, duly executed and witnessed will, it could be admitted to probate. We disagree.

We start with the proposition that, by validly executing the 1977 will, decedent intended to revoke the 1974 will and, likewise, by validly executing the 1979 will, decedent intended to revoke the 1977 will (*see* EPTL 3-4.1). Moreover, by completing such acts, decedent evinced her present intention to make new testamentary dispositions with each subsequent, validly executed will. The 2001 will also expressly indicated decedent's intent that it "supercede[ ]" all prior wills and there is no evidence that decedent's intent to revoke her preceding wills was equivocal or conditional (*compare Matter of Macomber*, 274 App Div at 727 [marks of testator indicating cancellation of will expressly referred to subsequent codicil which failed]). Nor is there any record evidence that decedent sought to revive the 1974 will, for example, by republication.

The essence of Surrogate's Court's determination here is that the inability to probate the 2001 will, alone, operates to render the express revocation of prior wills equivocal or conditional, ultimately resulting in the revival of the 1974 will. To countenance such a construction of the doctrine of dependent relative revocation would completely eviscerate the rule that revocation of a later will does not automatically revive a prior will (*see*

EPTL 3-4.6) and, thereby, "weaken those [statutory] provisions calculated to protect testators generally from fraudulent alterations of their wills" (*Matter of Andrews*, 162 NY 1, 5 [1900]).

Moreover, any inference that decedent would have preferred probate of the 1974 will over intestate distribution is purely speculative. Thus, in our view, decedent's intention to revoke the 1974 will when she executed the 1977 will is clear and unequivocal and Surrogate's Court improperly applied the doctrine of dependent relative revocation to revive the 1974 will based upon the failure of the subsequent wills to qualify for admission to probate. Since the determinations of Surrogate's Court with respect to the petition for letters of administration were based upon the admission to probate of the 1974 will, the matter must be remitted for further proceedings.

We have considered the parties' remaining contentions and find them to be either academic and/or without merit.

Cardona, P.J., Spain, Lahtinen and McCarthy, JJ., concur. Ordered that the order is reversed, on the law, without costs, and matter remitted to the Surrogate's Court of Broome County for further proceedings not inconsistent with this Court's decision.