**SMITH v. MAREZ**

[217 N.C. App. 267 (2011)]

———

SUZANNE FURR SMITH, INDIVIDUALLY AND SUZANNE FURR SMITH, AS EXECUTRIX UNDER THE WILL OF LEONARD GEORGE SMITH, PLAINTIFFS v. DEBORAH ANN SMITH MAREZ, STEFAN SMITH AND DIANE HILL, DEFENDANTS

No. COA11-475

(Filed 6 December 2011)

**1. Conflict of Laws—choice of law provision—IRA agreements—New York**

The IRA agreements contained a choice of law provision, and thus, the Court of Appeals applied New York law to the issues in this case.

SMITH v. MAREZ

[217 N.C. App. 267 (2011)]

2. **Pensions and Retirement—IRA—change of beneficiary— contract interpretation**

   The trial court did not err in a declaratory judgment action to determine the rights and obligations of the parties to decedent's rollover IRA and traditional IRA under New York law by granting summary judgment in favor of plaintiff surviving spouse. Decedent did not properly designate a beneficiary on the beneficiary designation form and he revoked his prior beneficiary designations.

3. **Pensions and Retirement—IRA—doctrine of dependent relative revocation—designation of beneficiaries—New York law**

   No New York cases have extended the application of the doctrine of dependent relative revocation to an issue of designation of beneficiaries of an IRA or an insurance policy.

4. **Wills—incorporation by reference—IRA beneficiary designation forms—failure to strictly comply with requirements of IRA agreement**

   Even if the provisions of decedent's will were considered as incorporated by reference into the IRA beneficiary designation forms, decedent did not strictly comply with the requirements of the IRA agreements as required by New York law.

Appeal by defendants from order entered on or about 20 January 2011 by Judge Kenneth F. Crow in Superior Court, Brunswick County. Heard in the Court of Appeals 10 October 2011.

*Trest & Twigg by Roy D. Trest, for plaintiffs-appellees.*

*Gary S. Lawrence and Andrea L. Hinshaw, for defendants-appellants.*

STROUD, Judge.

Deborah Ann Smith Marez, Stefan Smith, and Diane Hill (collectively referred herein as "defendants") appeal from the trial court's order granting summary judgment in favor of Suzanne Furr Smith ("plaintiff"). For the following reasons, we affirm the trial court's order.

## I. Background

On 2 December 2009, plaintiff, in her individual capacity and as executrix of the will of Leonard George Smith, filed a complaint against defendants alleging that the proceeds from Leonard George

Smith's ("decedent") "Rollover IRA" account were properly distributed to her and the proceeds from decedent's second "Traditional IRA" account should be distributed to her and that there was an actual controversy as to the ownership of these IRAs, as defendants contend that the proceeds from the two IRA accounts are the property of decedent's estate and not plaintiff. Plaintiff requested a declaratory judgment to determine "the rights and obligations of the parties to the above Rollover IRA account and the above Traditional IRA account." On 29 January 2010, defendants filed their answer, denying plaintiff's claims that plaintiff was entitled to the proceeds from the IRA accounts, and raising counterclaims that the decedent intended for the two IRA accounts to go to defendants in the percentages set forth in his "Last Will and Testament" or in the alternative, if the changes to his beneficiary forms were not effective, the distribution of the IRA accounts should be pursuant to the original designation forms, which gave defendants specific percentages of the IRA accounts. Defendants requested that "the Court declare the rights and obligations of the parties to the" IRA accounts and declare that "the Defendant's [sic] herein are the beneficiaries of the above referenced" IRA accounts. On or about 30 March 2010, plaintiff filed an answer denying defendants' counterclaims that the IRA accounts should be distributed pursuant to decedent's will or the original IRA designation forms. On or about 3 August 2010, plaintiff filed a motion for summary judgment.

The affidavits, depositions, and documents filed with that motion, along with the parties' stipulations and pleadings, tended to show that on 23 March 2006, Leonard George Smith executed a "Traditional IRA Adoption Agreement" and a "Rollover IRA Adoption Agreement[,]" with Pershing LLC as the custodian. On both IRAs, decedent made the following beneficiary designations to defendants: Stefan Smith, 37.50%; Deborah Marez, 37.50%; and Diane Hill, 25%. In 2007, decedent was diagnosed with cancer. On 15 November 2007, decedent executed his "Last Will and Testament" which bequeathed $100,000.00 to plaintiff and the residue of his estate to his children, including defendants, in the following percentages: Deboran [sic] Ann Smith Marez, 50%; Stefan Smith, 45%; Diane Hill, 5%; and Denise Smith, 0%[1]. It also appointed plaintiff as "Personal Representative of [his] estate[,]" and directed that his debts, expenses, and taxes be paid out of his residuary estate. On the same day, decedent executed

---

1. The will specifically states that it was the decedent's intention to exclude his daughter, Denise Smith.

new designation of beneficiary forms for the Pershing IRA accounts. In the space provided on each form for listing of beneficiaries, defendant wrote, "To be distributed pursuant to my Last Will and Testament[.]" In December 2007, decedent was informed that his cancer was terminal. Decedent married plaintiff on 16 December 2007. Decedent died on 29 February 2008. After decedent's death, Pershing distributed the proceeds of the Rollover IRA account to plaintiff.

On 27 January 2011, by written order, the trial court granted plaintiff's motion for summary judgment stating that "the Plaintiff is declared to be the owner of two IRA accounts held by the deceased Leonard George Smith with Pershing LLC as custodian[.]" On 9 February 2011, defendant gave notice of appeal from the trial court's 27 January 2011 order. On appeal, defendants contend that the trial court erred in its application of the law to the facts before it and granting summary judgment in favor of plaintiff or, in the alternative, summary judgment was in error as there was a genuine issue of material fact that needed to be resolved at trial.

## II.  Summary Judgment

We have stated that

> [s]ummary judgment may be granted in a declaratory judgment proceeding where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law . . . . On appeal, this Court's standard of review involves a two-step determination of whether (1) the relevant evidence establishes the absence of a genuine issue as to any material fact, and (2) either party is entitled to judgment as a matter of law.

*Steiner v. Windrow Estates Home Owners Ass'n*, ___ N.C. App. ___, ___, 713 S.E.2d 518, 521 (2011) (citation omitted).

Defendants contend that "the trial court erred in applying the law to the facts and granting summary judgment in favor of appellee." Specifically, defendants argue that the trial court erred in its interpretation of the IRA agreements and that the doctrine of dependent relative revocation is applicable to the facts before us.

### A.  Choice of Law

[1] We first note that the IRA agreements contain a choice of law provision, stating that "[t]he Plan shall be construed, administered,

and enforced according to the laws of the State of New York[.]" Our Courts have recognized the validity of a choice of law provision in a contract. *See Sawyer v. Market America, Inc.*, 190 N.C. App. 791, 794, 661 S.E.2d 750, 752 (holding that "where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." (citation omitted)), *disc. review denied*, 362 N.C. 682, 670 S.E.2d 235 (2008). Therefore, we will apply New York law to the issues before us.

## B. Contract Interpretation

[2] Defendants argue that the "ultimate goal" in resolving a controversy involving a change of beneficiary is "realization and effectuation of the parties' intent[.]" Defendants contend that "Decedent's clear intent was to name [defendants] as beneficiaries of the Pershing IRAs" by inserting "the phrase 'To be distributed pursuant to my Last Will and Testament[,]' " which gave decedent's residuary estate in percentages to defendants. As further evidence of decedent's intent, defendants argue that decedent had originally designated defendants as the beneficiaries of the IRA accounts and decedent's will was executed on the same day as he changed the beneficiary designations on his IRA accounts. Defendants further contend that decedent's beneficiary designation change substantially complied with the IRA agreements' provisions for changing beneficiaries, as the beneficiary designations form was accepted by Pershing. Plaintiff counters that the decedent's intentions as shown by statements in his will are not relevant, as the law required more than "substantial compliance" with the IRA agreements' requirements as to changing the beneficiary designation. Plaintiff argues that "Pershing [was] entitled to insist upon strict compliance for the terms of its IRA agreement[,]" which avoids "frequent and extended" litigation based on conflicting evidence as to the decedent's intentions. Plaintiff argues that based upon the IRA agreements, "no valid beneficiary was found to have been designated at the death of the accountholder" and the IRA proceeds should properly go to plaintiff by default.

New York Estates, Powers & Trusts Law § 13-3.2(e) (2010) states that

(e) A designation of a beneficiary or payee to receive payment upon death of the person making the designation or another must be made in writing and signed by the person making the designation and be:

(1) Agreed to by the employer or made in accordance with the rules prescribed for the pension, retirement, death benefit, stock bonus or profit-sharing plan, system or trust.

(2) Agreed to by the insurance company or the savings bank authorized to conduct the business of life insurance, as the case may be.

Although New York Estates, Powers & Trusts Law § 13-3.2(e) does not expressly refer to IRAs, it has been applied to them, *see Storozynski v. Storozynski*, 10 A.D.3d 419, 419-20, 781 N.Y.S.2d 141, 142 (N.Y. App. Div. 2004). Even though New York Estates, Powers & Trusts Law § 13-3.2(e) addresses "[a] designation of a beneficiary[,]" New York courts have held that a *change* of beneficiary requires the same formalities. *Androvette v. Treadwell*, 73 N.Y.2d 746, 747, 536 N.Y.S.2d 43, 43-44 (1988). The parties do not dispute that the decedent's change of beneficiary forms were in writing and signed by the decedent but disagree as to whether the designations were "[a]greed to" by Pershing and "made in accordance with the rules prescribed for the [IRA policies] . . . ." *See* New York Estates, Powers & Trusts Law § 13-3.2(e).

The Court of Appeals of New York has stated that "[i]t is a rule of the common law, that if the terms of the contract violate no law or public policy, are sustained by sufficient consideration, and have been fairly entered into, a strict and exact compliance with them may be insisted upon[.]" *Roehner v. Knickerbocker Life Ins. Co.*, 63 N.Y. 160, 164 (1875) (citation omitted). We find no New York case that addresses the issue of the validity of a change of beneficiary form for an IRA. However, analogous New York cases which address this same issue of compliance with a life insurance policy's beneficiary change form have stated that "[t]he provisions in a policy of insurance as to the procedure for making a change of beneficiary are for the benefit of the insurer. If the insurer does not choose to require enforcement thereof, and the rights of the respective claimants alone are before the court, the intent of the insured should govern." *Kornacki v. Mutual Life Ins. Co.*, 195 A.D.2d 847, 849, 600 N.Y.S.2d 788, 789 (N.Y. App. Div. 1993) (citations and quotation marks omitted). The Court in *Lincoln Life & Annuity Co. of N.Y. v. Caswell*, 31 A.D.3d 1, 813 N.Y.S.2d 385 (2006), summarized the relevant law regarding changes of beneficiaries, stating that

[o]ver the years, there has been some relaxation of the requirement of strict compliance with the procedures specified by an

## SMITH v. MAREZ

[217 N.C. App. 267 (2011)]

insurance policy for designating or changing beneficiaries. At first, it was held that "exact compliance with the provisions of the policy [would be excused] where the attempt at such compliance has been substantial and its full success prevented by some cause not within the control of the person attempting to make the change" (Schoenholz v New York Life Ins. Co., 234 NY 24, 29-30 [1922] [citations omitted]). As the law has evolved, the courts, recognizing that a primary purpose of specifying a procedure for changing beneficiaries is to protect the insurer from double liability, have come to hold that exact compliance with the contractual procedure will be deemed waived where the insurer, faced with conflicting colorable claims to the same policy proceeds, pays the proceeds into court in an interpleader action so that the opposing claimants may litigate the matter between themselves (see McCarthy, 92 NY2d at 442 [noting that "the insurer who has brought the proceeds of the policy into court and requested the court to adjudicate the rights of contesting claimants may no longer insist upon strict compliance"]; Cable v Prudential Ins. Co. of Am., 89 AD2d 636 [1982] ["strict compliance" with the policy's requirements for effecting a change of beneficiaries was "unnecessary" where the insurer had "paid the proceeds of the policy into the court leaving the parties to settle the controversy between themselves"]).

Id. at 5-6, 813 N.Y.S.2d at 388-89 (footnote omitted); See also Considine v. Considine, 255 A.D. 876, 877, 7 N.Y.S.2d 834, 835-36 (N.Y. App. Div. 1938) (stating that the provisions of an insurance policy regulating the way in which a change of beneficiary may be made are waived by an insurer when it has "interpleaded, paid the money into court and left the claimants to settle the controversy between themselves."). Further, the waiver of a right to strict compliance with the contract "requires no more than the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable." Nassau Trust Co. v. Montrose Concrete Products Corp., 56 N.Y.2d 175, 184, 451 N.Y.S.2d 663, 668 (1982) (citations omitted). The undisputed evidence in the record states that the proceeds from the Rollover IRA were distributed to plaintiff, but it is unclear as to whether the Traditional IRA was paid to plaintiff or is still held by Pershing[2]. However, it is clear that Pershing did not "pay[] the pro-

---

2. Plaintiff's affidavit as originally typed states that Pershing planned to pay the proceeds to plaintiff because of an improper designation of beneficiaries, but plaintiff crossed out and initialed this sentence. Plaintiff's complaint alleges that Pershing had not yet paid out the proceeds of the Traditional IRA. Other than this, the record includes no information as to what has become of the Traditional IRA.

ceeds [from either IRA] into court in an interpleader action so that the opposing claimants may litigate the matter between themselves." *See Lincoln Life & Annuity Co. of N.Y.*, 31 A.D.3d at 6, 813 N.Y.S.2d at 388. In addition, Pershing is not a party to this action and our record includes no affidavit or any other information from Pershing to indicate Pershing's position as to the IRAs or the change in beneficiary designation. Our record thus includes no indication that Pershing, as the holder of the accounts, has waived strict or "exact" compliance to the terms in the IRA agreements. In fact, our record does not indicate when Pershing actually received the change of beneficiary forms or if Pershing "[a]greed to" the change of beneficiary prior to decedent's death.[3] *See* New York Estates, Powers & Trusts Law § 13-3.2(e). Accordingly, even if we view the evidence in a light most favorable to defendants, there is no indication that Pershing has waived strict compliance with the terms of the IRA agreements. For these reasons, defendants' arguments regarding decedent's intent as indicated by the provisions of his will are irrelevant, as we must consider only whether decedent strictly complied with the requirements of the IRA agreement as to the change of beneficiary form.

The Pershing IRA agreements state that a "Beneficiary" is defined as "the person, persons, entity or entities (for instance, a trust), designated from time to time by a Participant . . . to receive benefits by reason of the death of the Participant[.]" The agreements also state that "[a] Participant may designate a Beneficiary or Beneficiaries of the Custodial Account at any time, and any such designation may be changed or revoked at any time, by written designation executed by the Participant in a form and manner prescribed by or acceptable to, and filed with, the Custodian." The designation of beneficiary change forms for the IRAs have blanks to be filled in providing information as to the beneficiary's name, gender, relationship to the participant, date of birth, social security number, address, and the percentage of the proceeds that the beneficiary would receive. On the original beneficiary designation forms, decedent listed the names of each defendant and filled in all of the other beneficiary information. In contrast, on both IRA beneficiary *change* forms, the decedent wrote, "To be distributed pursuant to my Last Will and Testament[.]" Also on the change of beneficiary forms, the decedent checked the box stating "CHANGE OF BENEFICIARY: I hereby revoke all prior beneficiary

---

3. Defendants argue that Pershing never notified decedent prior to his death that the change of beneficiary forms were not acceptable, so decedent had no opportunity to correct them. But the record also does not reveal if Pershing received the forms prior to decedent's death.

SMITH v. MAREZ

[217 N.C. App. 267 (2011)]

designations and designate the following beneficiary(ica) for my account[s]." As decedent did not fill out the information called for by Pershing's beneficiary designation form, did not name any "person" or "entity" as a beneficiary, and did not designate any percentages for distribution, he did not strictly comply with the terms of the agreements for change of beneficiary designation. The agreements further state that "[t]he latest such designation, change or revocation shall control" and "[i]f there is no Beneficiary designation on file with the Custodian, . . . the Custodian shall distribute the Custodial Account to the survivors of the Participant in the following order of preference:

(i)   The Participant's surviving spouse, if any

(ii)  The Participant's children, if any, in equal shares per stirpes

(iii) The Participant's estate[.]

Since the decedent did not properly designate a beneficiary on the beneficiary designation form, but he revoked his prior beneficiary designations, Pershing properly distributed the proceeds from the Rollover IRA, pursuant to the default terms, to plaintiff, the decedent's "surviving spouse[.]" The default terms of the Traditional IRA policy would also distribute its proceeds to plaintiff, as the relevant IRA agreement terms are identical.

In the alternative, defendants, citing *John Hancock Mut. Life Ins. Co. v. McManus*, 247 A.D.2d 513, 513-14, 669 N.Y.S.2d 320, 321 (N.Y. App. Div. 1998), further argue that under New York law "[i]f an attempted change of beneficiary fails, then the prior beneficiaries are entitled to the proceeds[.]" Defendants argue that since the beneficiaries in the change of beneficiary forms were not valid, the beneficiary change forms themselves are invalid, and the IRA proceeds should be distributed pursuant to the original beneficiary designation forms, which gave the IRA proceeds to defendants in various percentages. In *John Hancock Mut. Life Ins. Co*, the Court agreed with the trial court's finding "that the insured did not substantially comply with the requirements of her life insurance policies in order to effectuate a change of beneficiary" and that "the trial court properly concluded that a change of beneficiary had not been effected and that the surviving, named beneficiary was entitled to the proceeds." 247 A.D.2d at 514, 669 N.Y.S.2d at 321. We note that this was an interpleader action requiring only substantial compliance, not strict compliance. Also the Court's ruling was based on the specific terms of the policy in *John Hancock Mut. Life Ins. Co* but, as the exact terms of the insured's policy were not included in the Court's opinion, *see id.*,

we cannot make a comparison of that case to the terms of decedent's IRA agreements. Here, contrary to defendant's argument, decedent expressly revoked "all prior beneficiary designations[.]" Therefore, Pershing could not distribute the proceeds pursuant to decedent's original designations and defendant's argument is overruled.

## C.  Doctrine of Dependent Relative Revocation

**[3]**  Defendants argue that the doctrine of dependent relative revocation is applicable to the facts before us as "Decedent would not have revoked the Original Designation Forms if he had known the New Designation Forms would fail[;]" there is no indication that decedent meant to give the IRA proceeds to plaintiff; and "the court [should] give effect to Decedent's clear intent to give the proceeds to [defendants]." But defendants concede that this doctrine has been "mainly applied in the law of wills" and does not cite to us any New York case which applies this doctrine to a designation of beneficiary form. Plaintiff counters that the doctrine has been "mainly applied under New York law in cases involving Will interpretation" and is inapplicable to the facts before us. New York courts have stated that

> [t]he doctrine of dependent relative revocation may be simply stated by saying that where the intention to revoke a will is conditional and where the condition is not fulfilled, the revocation is not effective. The doctrine is usually applied where the testator cancels a will with a present intention to make a new testamentary disposition, and the new disposition is not made, or if made, fails of effect for some reason.

*Matter of Sharp*, 68 A.D.3d 1182, 1183-84, 889 N.Y.S.2d 323, 324-25 (N.Y. App. Div. 2009) (citation, quotation marks, and brackets omitted). Although it appears that New York has adopted the doctrine of dependent relative revocation, it has only been in the context of the interpretation of wills. *See id.* at 1185, 889 N.Y.S.2d at 325 (holding that the trial court "improperly applied the doctrine of dependent relative revocation" to revive the decedent's will); *In re Macomber's Will*, 274 A.D. 724, 87 N.Y.S.2d 308 (N.Y. App. Div. 1949) (affirming the application of the doctrine of dependent relative revocation to the deceased's will). After careful search, we find no New York cases that have extended the application of this doctrine to an issue of designation of beneficiaries of an IRA or an insurance policy. We decline to

extend the application of this doctrine beyond established New York law.[4] Defendants' argument is overruled.

D. Incorporation by reference

**[4]** Defendants, in the alternative, contend that through the operation of the doctrine of incorporation by reference there exists a genuine issue of material fact as to "whether the [decedent's will] is identified beyond all reasonable doubt[.]" Defendants argue that decedent by listing his "Last Will and Testament" in the beneficiary change form specifically identified his 15 November 2007 will as the document to be incorporated by reference and since his will bequests his residuary to defendants by percentages this reference arguably satisfies Pershing's requirement that the beneficiary be a "person[.]" Defendants conclude that since this creates a genuine issue of material fact, summary judgment was in error, and this issue should be decided by a jury. Plaintiff raises no counter argument to this issue.

> The doctrine of incorporation by reference requires that the paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt. . . . That rule of law is grounded on the premise that the material to be incorporated is so well known to the contracting parties that a mere reference to it is sufficient.

*Chiacchia v. National Westminster Bank*, 124 A.D.2d 626, 628, 507 N.Y.S.2d 888, 889-90 (N.Y. App. Div. 1986) (citation omitted).

Even if we assume arguendo that decedent's will was sufficiently referenced to be incorporated into the beneficiary forms, the incorporation alone would not clarify decedent's beneficiaries and certainly would not constitute strict compliance with the terms of the IRA agreements. Defendants argue that the statement, "To be distributed pursuant to my Last Will and Testament" on the beneficiary change forms incorporates decedent's will. As noted above, the Pershing agreements state that a beneficiary is a "person" or "entity" designated "to receive benefits by reason of the death of the Participant[.]" Decedent's 15 November 2007 will names several devisees, specifically plaintiff and defendants. Defendants' argument points us solely to decedent's bequest of his residuary estate to defendants in percentages. However, the will also directs payment of decedent's debts

---

4. Plaintiff also raises an argument as to the doctrine of revival, but we will not address this argument, since the related doctrine of dependent relative revocation is inapplicable to the facts before us.

and expenses from his residuary estate, payment of taxes from his residuary estate, and makes a specific bequest of $100,000 to plaintiff. The will makes no mention of either IRA account, much less designates who is "to receive benefits" from the IRAs or the percentages that would go to those persons, as defendants argue. Therefore, even if the provisions of the will were considered as incorporated by reference into the beneficiary designation form, decedent did not strictly comply with the requirements of the IRA agreements, *see Lincoln Life & Annuity Co. of N.Y.*, 31 A.D.3d at 6, 813 N.Y.S.2d at 388, as decedent's will does not clearly point to which "person" or "entity" that is to receive the proceeds from the IRAs, as required by the agreements. In addition, there is no indication that decedent provided a copy of his will to Pershing when he completed the change of beneficiary forms, so there is no indication that Pershing "[a]greed to" a designation made in this manner. *See* New York Estates, Powers & Trusts Law § 13-3.2(e). Therefore, even if there were a genuine issue of fact as to whether decedent incorporated his will by reference into the beneficiary change forms, it is not a material issue because incorporating the will into the beneficiary change form still does not provide for a beneficiary designation as required by the Pershing IRA agreements. Accordingly, defendants' argument is overruled.

For the foregoing reasons, we affirm the trial court's order granting summary judgment in favor of plaintiff.

AFFIRMED.

Chief Judge MARTIN and Judge GEER concur.