Velleros, Inc. v. Patterson, 2015 NCBC 15.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 5834

VELLEROS, INC.,  )
        Plaintiff  )
   )
        v.  )
   )
TAREN J. PATTERSON, THOMAS C. UHL  )
and FLETCHER CLARK JOHNSTON,  )
        Defendants  )

**OPINION AND ORDER**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Defendant Fletcher Clark Johnston's Motion to Amend Answer and Include Third-Party Complaint ("Johnston Motion"), Plaintiff's Motion for Summary Judgment and Default Judgment ("Plaintiff's Motion"), Plaintiff's oral motion made at the hearing on this matter for an order converting the preliminary injunction previously issued by the Court into a permanent injunction, and the parties' pending motions for sanctions (collectively, "Motions"), pursuant to Rules 11, 15, 37, 55, and 56 of the North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, after reviewing the Motions, briefs in support of and in opposition to the Motions, oral arguments at a hearing on January 15, 2015, and other appropriate matters of record, CONCLUDES that the Johnston Motion should be DENIED, and the Plaintiff's Motion should be GRANTED, for the reasons stated herein.

*Parker Poe Adams & Bernstein LLP by Charles E. Raynal, IV, Esq., Melanie Black Dubis, Esq., and Matthew H. Mall, Esq., for Plaintiff Velleros, Inc.*

*Defendant Fletcher Clark Johnston,* pro se.

*Defendant Taren J. Patterson,* pro se.

*Defendant Thomas C. Uhl,* pro se.

McGuire, Judge.

## PROCEDURAL HISTORY

1. On April 18, 2013, Velleros, Inc. ("Plaintiff") initiated this lawsuit by filing a Complaint against Taren J. Patterson ("Patterson"), Thomas C. Uhl ("Uhl"), and Fletcher Clark Johnston ("Johnston") (Patterson, Uhl, and Johnston are collectively referred to as "Defendants"). Plaintiff's action was designated as No. 13 CVS 5834 by the Clerk of Superior Court of Wake County. In its Complaint, Plaintiff pursues the following claims for relief ("Claim(s)"): First Claim for Relief: Declaratory Judgment; and Second Claim for Relief: Motion for TRO and Preliminary Injunction. In substance, Plaintiff's Complaint seeks a declaration by this Court that Defendants' actions at a shareholder meeting in April 2013 were of no effect and did not succeed in replacing the incumbent members of Plaintiff's Board of Directors with Defendants.

2. On April 25, 2013, this Court entered a Temporary Restraining Order ("TRO"). The TRO restrained and prohibited all Defendants and their agents from, *inter alia*: amending or repealing Plaintiff's Bylaws; taking any action with respect to the sale, lease, or exchange of Plaintiff's property and assets; causing the issuance or transfer of stock; removing or replacing directors, employees, or officers; and contracting on behalf of Plaintiff.[1]

---

[1] Order on Mot. for TRO and Prelim. Inj. (Apr. 25, 2013).

On May 15, 2013, this Court converted the TRO into a Preliminary Injunction containing the same prohibitions.[2]  At the hearing on Plaintiff's Motion, counsel for Plaintiff made an oral motion to convert the Preliminary Injunction to a Permanent Injunction.

3.    On July 25, 2013, Johnston filed an Answer and Counterclaim.[3] Johnston's Counterclaim seeks a Declaratory Judgment from this Court that Plaintiff is not entitled to the relief sought in the Complaint and that Defendants are the duly elected Board of Directors for Velleros, Inc.

4.    Despite receiving multiple extensions of time from the Court in which to answer or otherwise respond to Plaintiff's Complaint, Taren J. Patterson and Thomas C. Uhl never filed a responsive pleading. On September 3, 2013, the Court issued an entry of default against Patterson and Uhl pursuant to Rule 55(a).[4]

5.    In November 2013, Plaintiff moved for sanctions against the Defendants for failure to respond to Plaintiff's interrogatories or requests for production of documents.[5] The sanctions motion sought an order prohibiting Defendants from relying on any evidence that should have been produced in response to Plaintiff's discovery requests and requiring Defendants to pay Plaintiff's costs for bringing the sanctions motion. In response to this motion, this Court entered an order requiring Johnston to respond to any discovery requests on or before January 10, 2014, and holding the remainder of the sanctions motion in abeyance.[6]

---

[2] Order Granting Mot. for Prelim. Inj. (May 15, 2013).
[3] Def. Johnston Ans. & Countercl.
[4] Entry of Default Against Def. Patterson & Uhl (Sept. 3, 2013).
[5] Pl.'s Mot. Sanctions (Nov. 14, 2013). Plaintiff's interrogatories and requests for documents were served on Defendants on May 24, 2013. *Id.*
[6] Am. Order Mot. Sanctions (Dec. 13, 2013).

6.      On November 27, 2013, Plaintiff filed the Plaintiff's Motion. The Plaintiff's Motion seeks a default judgment against Patterson and Uhl and summary judgment against Defendant Johnston.

7.      On December 20, 2013, Patterson (who by this point had obtained counsel) filed a brief opposing the Plaintiff's Motion.[7] Patterson argued that, despite the entry of default and the resulting admission of all allegations in the Complaint, the allegations in the Complaint were "insufficient to support judgment in [Plaintiff's] favor."[8] Neither Patterson nor any other Defendant filed any evidence in opposition to Plaintiff's Motion to Summary Judgment.

8.      On January 10, 2014, Johnston filed a Motion to Amend Answer and Include Third Party Complaint (the "Johnston Motion"). The Johnston Motion contends that the original Answer was filed "on extremely short notice," evidently due to Johnston's prior belief that the other Defendants had retained counsel on his behalf, and that Johnston had conducted additional investigation since filing his original Answer that warranted the filing of an amended Answer and Third-Party Complaint.

9.      On February 4, 2014, Defendant Johnston filed a Rule 11 Motion asserting that Plaintiff's counsel signed all filings in violation of Rule 11. This Court subsequently granted Plaintiff's motion to defer a responsive filing to the Rule 11 Motion until thirty days after the resolution of the merits in this matter.[9]

---

[7] In the Case Management Order, this Court specified that all three Defendants would be treated as one party for purposes of briefing and discovery. Case Management Order (Sept. 3, 2013) at 4. Thus, in light of Defendant Patterson's brief, the Court will not treat Plaintiff's Motion as unopposed by any Defendant.

[8] Patterson's Opp. Pl.'s Mot. Summ. J. ("Patterson Br.") 3.

[9] Order on Mot. Defer R. 11 Proceedings (Dec. 11, 2014).

10.     To date, Defendant Uhl individually has not filed any pleadings or otherwise appeared in this case.[10] Defendant Patterson has submitted no filings other than his opposition to Plaintiff's Motion.[11]  The Court granted counsel for Patterson permission to withdraw prior to the hearing on Plaintiff's Motion.[12]

11.     Both Plaintiff's Motion and the Johnston Motion have been briefed and are ripe for determination.  On January 15, 2015, the Court held a hearing on Plaintiff's Motion. Plaintiff was represented by counsel at the hearing. Johnston appeared on behalf of himself, but Patterson and Uhl did not appear at the hearing.  At the hearing, Plaintiff's counsel made an oral motion to convert the preliminary injunction into a permanent injunction.

## FACTUAL BACKGROUND

The Court considers the following facts in reaching its conclusion.[13]

12.     Plaintiff is a closely-held Delaware corporation with its principal place of business in North Carolina.[14] Plaintiff has adopted a set of amended corporate bylaws (the "Bylaws").[15]

---

[10] It is the Court's understanding based on representations at the hearing on the Summary Judgment Motion that all three Defendants were represented by counsel at one point, and that Defendant Uhl may have participated in a mediation in some capacity.

[11] Notice of Appearance (Sept. 3, 2013); Def. Patterson's Opp. Mot. Summ. J. & Default J. of Pl. (Dec. 20, 2013).

[12] Order on Mot. Withdraw (Jan. 13, 2015).

[13] A court does not make findings of fact in ruling upon a motion for summary judgment. However, the court may summarize material facts that do not appear to be at issue and which justify the judgment. *Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142 (1975). Because the Court has entered default against Defendants Patterson and Uhl, all facts alleged by Plaintiff in its Complaint are deemed uncontested for purposes of ruling on Plaintiff's Motion as to Patterson and Uhl. *Baxter v. Jones*, 14 N.C. App. 296, 312 (1972) (internal citations omitted). This includes the exhibits attached to and incorporated by the Complaint. *See, e.g., Weaver v. St. Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204 (2007) ("If, however, documents are attached to and incorporated within a complaint, they become part of the complaint.").

[14] Compl. ¶ 1; Exh. D to Compl. ("Bylaws") I; Aff. Of Danny L. Parker ("Parker Aff.") ¶ 3.

[15] Parker Aff. ¶ 27; Bylaws.

13.     Patterson and Uhl are minority shareholders and former employees of Plaintiff.[16] Together, they own 40% of Plaintiff's common stock, but no preferred stock. Overall, Patterson and Uhl own approximately 34% of Plaintiff's stock.[17] Patterson, a citizen and resident of Dallas, Texas, was a member of Plaintiff's Board of Directors for part of 2008.[18] Uhl is a citizen and resident of San Diego, California.[19]

14.     Johnston is a citizen and resident of Dallas, Texas.[20] He does not own stock in Plaintiff, nor does he have any present or prior affiliation with Plaintiff.[21] He is a licensed attorney in the state of Texas.[22]

15.     In December 2012, Patterson and Uhl, through Johnston, threatened Plaintiff with litigation and began to make allegations of wrongdoing by Plaintiff's Board of Directors and CEO. [23]

16.     Defendants Patterson and Uhl submitted a demand to Plaintiff for a special stockholder meeting on or about December 18, 2012. The demand described the purpose of the special meeting as "election or removal of any director or directors; vacancy or vacancies; amendment, alteration, modification or repeal to or of any bylaw of [sic] bylaws; or other corporate governance matter."[24] In spite of multiple requests from Plaintiff for Patterson and Uhl to provide further specifics about the purpose of the special meeting, they did not do so.[25]

17.     On March 19, 2013, CEO Danny Parker ("Parker") sent a Memorandum to all of Plaintiff's stockholders. The Memorandum stated:

---

[16] Compl. ¶¶ 2-3; *see* Exh. A to Parker Aff. ("Notice"); Parker Aff. ¶¶ 5-6.
[17] Parker Aff. ¶ 5.
[18] Compl. ¶¶ 2, 20; Parker Aff. ¶ 6.
[19] Compl. ¶ 3; Johnston Ans. & Countercl. ¶ 3.
[20] Compl. ¶ 4; Johnston Ans. & Countercl. ¶ 4.
[21] Parker Aff. ¶ 7; *see* Compl. ¶ 4.
[22] Compl. ¶ 25; Parker Aff. ¶ 7.
[23] Compl. ¶ 26; Parker Aff. ¶ 10.
[24] Compl. ¶ 29; Parker Aff. ¶ 11.
[25] Compl. ¶ 30; Parker Aff. ¶ 11.

Dear Velleros, Inc. Stockholder:

I am writing to inform you that the Velleros, Inc. Board of Directors (the "Board") has determined that it will call an Annual Stockholders' Meeting for April 16, 2013 at 7 p.m[sic] (the "Annual Meeting"). In addition, at the request of Thomas C. Uhl and Taren J. Patterson (the "Requesting Stockholders"), the Board of Directors will call a Special Stockholders' Meeting for April 16, 2013 (the "Special Meeting"), to commence immediately after the adjournment of the Annual Meeting. Formal notice of the meetings, including proxy materials, directions, etc. will be provided by regular mail and electronic mail not less than 10 days prior to the date of the Annual Meeting and Special Meeting. (If you are willing to waive notice by regular mail and to receive the meeting materials solely by electronic mail, please let me know via return email).

The first item of business at the Annual Meeting will be the election of directors. The Board, pursuant to Article II, Section I of the Bylaws (Amended) of Velleros, Inc. ("Velleros" or the "Company") and with the consent of the holders of the Company's Series A Preferred Stock as required pursuant to Section 7(g) of the Certificate of Designation of Preferences and Rights of Series A Preferred Stock of the Company filed on March 24, 2008, as amended, has set the size of the Board at three and intends to nominate each of Richard Speers, David LeClaire and Danny Parker for election. If you wish to nominate any other candidates to serve as members of the Board, please provide me with each such candidate's name, address, email address and telephone number, as well as a brief summary of such candidate's qualifications for inclusion in the proxy materials. This information must be received by me at dparker@velleros.com by no later than April 2, 2013 at 5:00 pm eastern time. *So that all stockholders have sufficient time to consider each candidate and make an informed vote, no nominations received after that time will be presented to the stockholders at the Annual Meeting. This means that there will be no nominations considered from the floor.*

The Board does not presently intend to bring any additional items of business before the stockholders at the Annual Meeting. However, all stockholders may submit binding or precatory proposals for consideration by the stockholders at the Annual Meeting. If you wish to submit any such proposals for consideration by the stockholders at the Annual Meeting, please provide me with the proposal to be voted on by the stockholders. Any such proposals must be received by me at dparker@velleros.com by no later than April 2, 2013 at 5:00 pm eastern time. *So that all stockholders have sufficient time to consider each proposal and make an informed decision, no proposals received after that time will be presented to the stockholders at the Annual Meeting. This means that there will be no proposals considered from the floor.*

The Special Meeting will be called to order immediately after the adjournment of the Annual Meeting. The Requesting Stockholders and the remaining stockholders may submit proposals for consideration by the stockholders at the Special Meeting provided that such proposals fit within the purpose of the Special Meeting. The purpose of the Special Meeting, as set forth

in the Requesting Stockholders' request, is to vote on binding or precatory proposals with respect to any "election or removal of any director or directors; vacancy or vacancies; amendment, alteration, modification or repeal to or of any bylaw or bylaws; or other corporate governance matter." If you wish to submit any proposals within such purpose for consideration by the stockholders at the Special Meeting, please provide me with the proposal to be voted on by the stockholders. Any such proposals must be received by me at dparker@velleros.com by no later than April 2, 2013 at 5:00 pm eastern time. *So that all stockholders have sufficient time to consider each proposal and make an informed decision, no proposals received after that time, including proposals received from the Requesting Stockholders, will be presented to the stockholders at the Special Meeting. This means that there will be no proposals considered from the floor.*

Please do not hesitate to contact me if you have any questions.[26]

18.     No nominations for directors or other proposals were submitted by the April 2, 2013 deadline.[27]

19.     On April 4, 2013, Plaintiff sent the shareholders a Notice of annual and special meetings of stockholders to be held on April 16, 2013. The formal Notice listed Danny Parker, Richard Speers, and David LeClaire as nominees for Plaintiff's Board of Directors.[28]  The Notice also stated that the Special Meeting would be held on April 16, 2013, but that since Plaintiff had not received any proposals by the April 2 deadline, there would be no proposal voted on at the special meeting.[29]

20.     The Annual Meeting was held as scheduled on April 16, 2013, and commenced at 7:00 p.m.[30] The Corporate Secretary confirmed at the Annual Meeting that a quorum was present.[31] Per the Bylaws, Parker, as CEO and Chairman of the Board, presided over both the Annual and Special Meetings.[32]

---

[26] Exh. A to Compl. ("Memorandum") (emphasis in original).
[27] Compl. ¶ 35; Parker Aff. ¶ 14.
[28] Exh. B to Compl. ("Notice").
[29] *Id.*
[30] *Id.*; Compl. ¶ 37.
[31] Compl. ¶ 37; Parker Aff. ¶ 17.
[32] Bylaws Art. VI. § 5.a.; Parker Aff. ¶ 22.

21.     Holders of all of "the shares of capital stock issued, outstanding, and entitled to vote were present in person, or represented by proxy," at the Annual Meeting.[33] Present in person at the meeting were individuals holding 43.7% of Plaintiff's outstanding stock.[34] Patterson and Uhl were not present in person, but were represented by a proxy, Fred Farzanegan ("Farzanegan"). At the Annual Meeting, a majority of Plaintiffs' stockholders, and all stockholders except Patterson and Uhl, voted Danny Parker, Richard Speers, and David LeClaire to the Board of Directors.[35] All of the stockholders except for Patterson and Uhl voted for Parker, Speers, and LeClaire.[36]

22.     The Special Meeting commenced at 7:23 p.m., immediately after the Annual Meeting ended.[37] There is no allegation in the Complaint, nor any evidence in the record, that any stockholders or their proxies did not attend the Special Meeting. Individuals holding 43.7% of Plaintiff's outstanding stock were present at the Special Meeting in person.[38] Parker, in his capacity as Chairman, indicated that no proposals would be considered at the Special Meeting, because none had been submitted prior to the April 2, 2013, deadline, but that each stockholder would have the opportunity to address the Board and their fellow stockholders for ten minutes.[39]

23.     Despite Parker's statement, Farzanegan read a series of purported proposals ("Proposal(s)") on behalf of Patterson and Uhl. The Proposals were to: (1) repeal any amendments to the Bylaws adopted by the Board of Directors; (2) amend the Bylaws to authorize only stockholders to fill vacancies on the Board of Directors; (3) remove incumbent

---

[33] Parker Aff. ¶ 17.
[34] Second Aff. of Parker ("Second Parker Aff.") ¶ 5.
[35] Compl. ¶ 37; Parker Aff. ¶ 18.
[36] *Id.*
[37] Compl. ¶ 38.
[38] Second Parker Aff. ¶ 5.
[39] Compl. ¶ 38; *see* Parker Aff. ¶¶ 20, 21, 22.

Directors for cause, as applicable; (4) remove incumbent Directors without cause; and (5) elect Defendants Johnston, Patterson, and Uhl to fill any and all existing vacancies.[40] There were no vacancies on Plaintiff's Board of Directors at the time.[41]

24. No vote was called or taken by the Chairman on the Proposals, but Farzanegan purported to cast Patterson's and Uhl's vote in support of each Proposal.[42] None of the other stockholders present in person or by proxy cast votes regarding the Proposals.[43]

25. On April 17, 2013, Johnston sent an e-mail to all of Plaintiff's stockholders and its corporate legal counsel. In the e-mail, Johnston asserted that the Proposals were "adopted by the vote of the holders of a majority of the shares entitled to vote and represented at a meeting at which quorum was present." Johnston opined that, due to various technical deficiencies with certain classes of Plaintiff's stock and the limited proxy solicited by management, Patterson and Uhl, through their Proxy, comprised the requisite percentage of shares needed to adopt the Proposals. Johnston further asserted that Defendants, as the purported newly-elected Board of Directors, intended to "take action, as [they] deem necessary or appropriate under the facts and circumstances, including, without limitation, by issuing such notices and releases and initiating such legal proceedings and communications as so determined."[44]

26. Plaintiff subsequently initiated this lawsuit, seeking a declaration that Defendants' actions were invalid and preventing Defendants from taking any action as the purported Board of Directors.

## DISCUSSION

---

[40] Compl. ¶¶ 40-41; Exh. C to Compl. ("Proposals").
[41] Compl. ¶ 41; Parker Aff. ¶ 19.
[42] Compl. ¶¶ 42-43; Parker Aff. ¶ 25.
[43] Parker Aff. ¶ 26.
[44] Exh. E to Compl. ("Johnston Letter").

27.     For purposes of this Opinion, the Motions before the Court are the Johnston Motion and Plaintiff's Motion.[45] The Court will first address the Johnston Motion.

The Johnston Motion

28.     Johnston filed his Motion to Amend Answer and Include Third-Party Complaint on January 10, 2014, roughly six months after filing his Answer, three months after the close of discovery, and over two months after Plaintiff filed its Motion for Summary Judgment.

29.     The Johnston Motion contends that the amendment is necessary because, *inter alia*, Johnston's initial Answer was "filed on extremely short notice after Johnston learned that the other Defendants had failed to engage or retain North Carolina counsel and being led to believe that replacement North Carolina counsel had been retained to represent all of the Defendants," and Johnston had conducted further investigation since filing his original Answer that he believed to merit filing his Amendment.

30.     The Johnston Motion does not seek to amend Johnston's answers to the allegations in the Complaint or any affirmative defenses raised in his original Answer. Instead, the motion purports to amend the counterclaim raised in Johnston's Answer, and to add third-party claims against at least 49 third-party defendants.  Johnston attached approximately 400 pages of exhibits to the proposed amended answer. The proposed amended answer contains 770 numbered paragraphs of allegations with titles like "Bogus Disclaimer of Bogus Directors," "Unambiguous terminology for Dishonest and Incompetent North Carolina Attorneys," "Certain Arguendo Alternative/Hypothetical Delaware Corporation

---

[45] The other pending motions in this matter will be addressed at the end of this Opinion and Order.

Terminology," "Ship of Theseus or Knowingly False Verification?," and "North Carolina Attorneys May Know Less About Securities Law Than They Do Delaware Law." The Third-Party Claim alleges that Velleros has suffered "damage, harm, or injury" as a result of the conduct Johnston attempts to allege.

31.     Plaintiff opposes the Johnston Motion, contending that Johnston has unduly delayed in filing the proposed amendment, that the Johnston Motion has been made in bad faith "to contrive a conflict between Velleros and its counsel," and that Velleros would be prejudiced if the amendment were allowed at this stage of the proceeding. Further, Plaintiff contends that the proposed amendment is futile, because Johnston attempts to state a Third-Party Claim on behalf of Plaintiff, for which he lacks standing.[46]

32.     Rule 15 provides that "leave shall be freely given" to amend a pleading "when justice so requires." This has been interpreted to mean that an amendment should be "freely allowed unless some material prejudice to the other party is demonstrated." *Mauney v. Morris*, 316 N.C. 67, 72 (1986). A court may deny a motion to amend for, *inter alia*, undue delay, bad faith, and undue prejudice. *See, e.g.*, *Martin v. Hare*, 78 N.C. App. 358, 361 (1985). Ultimately, whether to allow an amendment rests in the trial judge's discretion. *House of Raeford Farms, Inc. v. Raeford*, 104 N.C. App. 280, 282 (1991).

33.     The Court concludes that, at a minimum, Defendant Johnston unduly delayed in filing his Motion. Even assuming that Johnston filed his original Answer "on extremely short notice," the Johnston Motion was not filed for half a year after his purported discovery that he was proceeding in this lawsuit *pro se*. In addition, the Court finds that Johnston's proposed amendments would be futile, both because they fail to adequately state any cause of action against any party, and because the claims purport to be on behalf of "the Company"

---

[46] Pls.' Resp. Mot. Amend Ans. & Include Third Party Compl. by Def. Johnston.

and Johnston is not a shareholder in Velleros. Accordingly, he lacks standing to bring derivative claims on behalf of Velleros. To allow such a voluminous amendment at this stage of the proceedings would result in undue prejudice to Plaintiff.

34. THEREFORE, the Court FINDS and CONCLUDES, in its discretion, that the Johnston Motion should be DENIED.[47]

## Plaintiff's Motion

35. Plaintiff has moved for summary judgment with regard to its claims against Johnston and Johnston's counterclaim against Plaintiff, and for default judgment on its claims against Patterson and Uhl. Both Plaintiff and Johnston seek declaratory judgments as to the legal effect of the actions taken by Defendants at the Special Meeting. Before proceeding to an analysis of the motions for summary judgment and default judgment, the Court addresses the law to be applied to its determination.

## Choice of Law

36. It is well established under North Carolina law that procedural matters are governed by the law of the forum. *See, e.g.*, *Young v. Baltimore & O.R. Co.*, 266 N.C. 458 (1966). A court's analysis of a claim for declaratory judgment is therefore governed by North Carolina law.[48]

37. With regard to the substantive law to be applied to the claims, North Carolina has adopted the "internal affairs doctrine," which recognizes that "only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the

---

[47] It follows that the exhibits included with the proposed amendment are not before this Court for its analysis of Plaintiff's Motion.

[48] *See also Boyce Thompson Inst. for Plant Research v. Medimmune, Inc.*, 2009 Del. Super. LEXIS 185, *20 n. 44 (finding that, in an action in Delaware court for declaratory judgment on a contract with a New York choice of law provision, the Delaware declaratory judgment statute would govern the "procedural aspects" and the choice of law provision would govern the "substantive rights of the parties" under the disputed contract).

relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands." *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 680-81 (2008) (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982)). Pursuant to the internal affairs doctrine, courts look to the local law of the state of incorporation to determine matters involving a corporation's "internal affairs." *Id.* Plaintiff is a Delaware corporation, and the allegations at issue deal with the internal governance of Plaintiff. In addition, the parties appear to agree that Delaware law should be applied to the parties' claims. Accordingly, Delaware law governs this Court's legal analysis of the substantive claims in this action.

## Legal Standard

38.     Under North Carolina law, a declaratory judgment is a statutory remedy that grants a court the authority to "declare rights, status, and other legal relations" when an "actual controversy" exists between parties to a lawsuit. N.C. Gen. Stat. § 1-253; *Pine Knoll Shores v. Carolina Water Serv., Inc.*, 128 N.C. App. 321, 321 (1998). Summary judgment may be granted on a claim for declaratory judgment if there remain no issues of material fact and either party is entitled to relief as a matter of law. *Smith v. Marez*, 217 N.C. App. 267, 270 (2011) (internal citation omitted).

39.     Summary judgment is appropriately granted under Rule 56 of the North Carolina Rules of Civil Procedure ("Rules") if the pleadings, depositions, interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law. *Smith*, 217 N.C. App. at 270. Any inference of fact should be drawn against the movant. *Forbis v. Neal*, 361 N.C. 519, 523-524 (2007) (citing *Caldwell v. Deese*, 288 N.C. 375, 378 (1975)). A genuine issue of material fact will require the court to preserve the issue for a finder of fact. *Bumpers v. Cmty. Bank of N. Va*, ___ N.C. ___, 747 S.E.2d 220 (2013). Although the Court must view the record "in the

light most favorable to the party opposing the motion," Rule 56(e) provides that summary judgment may not be defeated by "mere allegations or denials," but rather that the opposition must be supported by "specific facts showing that there is a genuine issue for trial." *Patterson v. Reid*, 10 N.C. App. 22, 28 (1970). In this case, Plaintiff has filed the sworn affidavits of Danny Parker and exhibits in support of its motion for summary judgment. Johnston did not offer any evidence in opposition to the motion for summary judgment. Accordingly, the facts as supported by Plaintiff's evidence are undisputed.

40.    Under Rule 55, "[w]hen default is entered due to a defendant's failure to answer, the substantive allegations contained in plaintiff's complaint are no longer in issue, and for the purposes of entry of default and default judgment, are deemed admitted." *Luke v. Omega Consulting Grp., LC*, 194 N.C. App. 745, 751 (2009). A party against whom default has been entered, however, may still challenge the sufficiency of the complaint's allegations to support the relief sought by the plaintiff. *Baxter v. Jones*, 14 N.C. App. 296, 312 (1972) ("The default admits only the allegations of the complaint and does not extend either expressly or by implication the scope of the determination sought by the plaintiff, or which could be granted by the court."); *see also Hunter v. Spaulding*, 97 N.C. App. 372, 377 (1990). In other words, Plaintiff must still establish that the facts alleged in the Complaint support judgment in its favor.

41.    Parker's first affidavit[49] mirrors most of the allegations contained in the Complaint, and the undisputed facts for purposes of summary judgment are almost identical to the factual allegations in the Complaint upon which Plaintiff seeks default judgment. The question for this Court's consideration with regard to both motions is whether or not the facts

---

[49] Plaintiff filed two affidavits from Parker. The first affidavit signed on 11/25/13 ("Parker Aff.") is the affidavit containing essentially the same facts as alleged in the Complaint. The second affidavit signed on 12/30/13 ("Second Parker Aff.") contains additional facts not alleged in the Complaint.

support judgment as a matter of law in favor of Plaintiff. Accordingly, the Court will analyze the motions together and consider the arguments raised by Patterson in his opposition to the motion for default judgment as raised on behalf of all of the Defendants.

42.     The facts and allegations establish that Patterson and Uhl were not successful in ousting Plaintiff's Directors or electing themselves Directors at the Special Meeting. It is undisputed that all of the voting shares of stock were present at the Special Meeting.[50] Patterson and Uhl collectively own approximately 35% of Velleros' stock. Even if their proxy, Farzanegan, had properly voted all of Patterson's and Uhl's shares in favor of removing Plaintiff's Directors and electing Defendants, this was not sufficient to remove or elect directors under Plaintiff's Bylaws. Plaintiff's Bylaws provide that "[t]he vote of the holders of a majority of the shares entitled to vote and thus represented at a meeting at which a quorum is present shall be the act of the stockholders' meeting unless a greater number is required . . . ."[51] The Bylaws further provide that "[t]he owners of a majority of the outstanding shares of capital stock may remove any Director . . ." and that vacancies on the Board of Directors "will be filled by the owners of the majority of outstanding shares of capital stock."[52] It is undisputed that no shareholders others than Patterson and Uhl voted in favor of the removal of Plaintiff's Directors and the election of Defendants as Directors. Defendants received, at best, the votes of only approximately 40% of Plaintiff's outstanding shares. This did not effect the removal or election of any Directors.

43.     Similarly, Plaintiff's Bylaws provide that the Bylaws can be amended only by "by the affirmative vote of a majority of shares entitled to vote."[53] It is undisputed that

---

[50] Parker Aff. ¶ 17; Patterson Br. at 6.
[51] Bylaws Art. II, § 9.
[52] Bylaws Art. III §§ 3, 4.
[53] Bylaws Art. X § 1.

Defendants' proposed amendments to Plaintiff's Bylaws received the votes of only Patterson's and Uhl's shares, and not the majority of Plaintiff's shares required to amend the Bylaws.

44. Finally, it is also undisputed that Defendants' attempts to present and vote on their proposals at the Special Meeting were not effective because no actual vote of the stockholders on those proposals was called for or taken at the Special Meeting.[54] Plaintiff's Bylaws authorized Parker, as Chairman of the Board, to preside over all stockholder meetings, and it is undisputed that Parker did not call for a vote on Defendants' Proposals.[55]

45. Patterson argues that Defendants properly passed each of their proposals at the Special Meeting because Patterson's and Uhl's shares constituted the majority of shares entitled to vote at the Special Meeting. This argument is contradicted by the allegations, the record evidence, and Patterson's and Uhl's admissions. Patterson concedes that "all shareholders were present, or represented by proxy, at the special meeting."[56] Although not alleged in the Complaint, by which they are bound, Defendants contend that *all* of the shareholders at the Special Meeting other than Patterson and Uhl "were represented by proxy that restricted their voting authority" and were not entitled to vote on Defendants' proposals.[57] Defendants cite no support for this claim and, in fact, the undisputed facts establish that stockholders owning 43.7% of the voting shares were present in person at the Special Meeting. There is no allegation in the Complaint or evidence in the record that any proxies at the Special Meeting were restricted from voting on any proposal. Finally, by their default, Patterson and Uhl have admitted that Defendants' proposals at the Special Meeting were "not approved."

---

[54] Parker Aff. ¶¶ 25-26; Compl. ¶ 43.
[55] Bylaws Art. VI. § 5.a.; Compl. ¶ 43; Parker Aff. ¶ 22.
[56] Patterson Br. at 6.
[57] *Id.* at 7.

46.    The undisputed material facts establish that Plaintiff is entitled to judgment as a matter of law with regard to its Motion for Summary Judgment against Johnston.

47.    The admitted factual allegations in the Complaint establish that Plaintiff is entitled to default judgment against Patterson and Uhl.[58]

48.    Plaintiff also seeks summary judgment on Johnston's counterclaim for declaratory judgment.  In his counterclaim, Johnston seeks a declaration that Plaintiff did not validly elect Danny Parker, Richard Speers, and David LeClaire as Directors at the Annual Meeting, and that at the Special Meeting Patterson and Uhl successfully removed Parker, Speers, and LeClaire from office, elected Defendants as Directors, and passed their proposed bylaws.  Again, Johnston did not file with the Court any evidence in opposition to Plaintiff's Motion for Summary Judgment on the counterclaim.  The same undisputed facts that entitle Plaintiff to summary judgment on its claim for declaratory relief support entry of judgment as a matter of law in its favor with regard to Plaintiff's Motion for Summary Judgment on Johnston's counterclaim.

Motions for Sanctions

49.    In its Order of December 13, 2013, this Court granted Plaintiff's November 14, 2013 motion to compel Johnston to respond to Plaintiff's discovery requests but held in abeyance its ruling on Plaintiff's request for sanctions related to that motion.  Pursuant to Rule 37(a)(4) of the North Carolina Rules of Civil Procedure, the Court now GRANTS Plaintiff's request for sanctions.

---

[58] The Court need not address the parties' respective arguments regarding the validity of the Advance Notice Requirement imposed by Plaintiff and the sufficiency of Defendants' notice regarding the purposes for Special Meeting.  As discussed above, even if Defendants' proposals were properly presented and voted upon at the Special Meeting, the undisputed facts establish that the proposals failed to receive the required votes and were unsuccessful.

50.    On February 4, 2014, Defendant Johnston filed a Rule 11 Motion asserting that Plaintiff's counsel signed all the filings submitted by Plaintiff in this case in violation of Rule 11. This Court subsequently granted Plaintiff's motion to defer a responsive filing to the Rule 11 Motion until after the resolution of the merits in this matter. Having now considered the record before it, the pleadings filed by Plaintiff in this case, the brief submitted by Johnston in support of his Rule 11 Motion, and other appropriate matters, the Court in its discretion DENIES Johnston's Rule 11 Motion, and Plaintiff is not required to respond to that motion.

NOW THEREFORE, based upon the foregoing, it hereby is ORDERED that:

51.    Defendant Johnston's Motion to Amend Answer and Include Third-Party Complaint is DENIED.

52.    Plaintiff's Motion for Summary Judgment as to its First Claim for Relief for Declaratory Judgment against Defendant Johnston is GRANTED.

53.    Plaintiff's Motion for Summary Judgment on Johnston's counterclaim for declaratory judgment is GRANTED.

54.    Plaintiff's Oral Motion for Permanent Injunction is DENIED.[59]

55.    Plaintiff's Motion for Default Judgment as to its First Claim for Relief for Declaratory Judgment against Defendants Patterson and Uhl is GRANTED.

56.    The Court enters the following DECLARATORY JUDGMENT pursuant to G.S. §1-253 regarding the rights, status and other legal relations of the parties to this action:

a. Danny Parker, Richard Speers and David LeClaire were duly elected as members of Velleros' Board of Directors at the April 16, 2013 Annual Meeting of the Company and constitute the current Board of Directors;

---

[59] The Court does not believe it would be appropriate to, or that it has the authority to, permanently enjoin Patterson and Uhl from participating in the affairs of Velleros in the future as shareholders.

b. No stockholder vote occurred at the Special Meeting held on April 16, 2013, and no stockholder proposals were approved at the Special Meeting;

c. The proposals offered by Patterson and Uhl were not approved by a majority of Velleros stockholders present in person and by proxy and entitled to vote, and were not effective to remove the current directors, elect Patterson, Uhl and Johnston as new directors, or to amend Velleros' bylaws;

d. Patterson, Uhl and Johnston currently lack legal authority to act as directors or officers of Velleros.

57. The Preliminary Injunction entered by this Court on May 15, 2013, is hereby DISSOLVED, and the security posted with the Clerk of Court is RELEASED and may be returned to Plaintiff.

58. Plaintiff's Motion for Sanctions filed on November 14, 2013 is GRANTED. Plaintiff shall file with the court an affidavit specifying the fees and costs being sought within 21 days of the entry of this Opinion and Order. Defendants shall have 21 days to file any response to the affidavit filed by Plaintiff.

59. Defendant Johnston's Rule 11 Motion for sanctions is DENIED.

SO ORDERED, this the 23rd day of February, 2015.