Hardin v. Lewis, 2016 NCBC 55.

STATE OF NORTH CAROLINA

COUNTY OF CUMBERLAND

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 3899

VICTORIA G. HARDIN,
              Plaintiff,

        v.

RICHARD M. LEWIS, JR.; RENNY W.
DEESE; JAMES R. NANCE, JR.; JOHN G.
BRIGGS, III; LEWIS DEESE NANCE
BRIGGS & HARDIN LLP; and LEWIS
DEESE NANCE & BRIGGS,
              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

**OPINION AND ORDER**

**ORDER APPOINTING RECEIVER**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Plaintiff's Motion for Summary Judgment and to Compel Compliance with Prior Orders Entered in this Action ("Plaintiff's Motion for Summary Judgment"). On July 7, 2016, the Court held a hearing on Plaintiff's Motion for Summary Judgment.

THE COURT, having considered the Motion, the memoranda filed in support of and opposition to the Motion, the affidavits and exhibits, the pleadings and appropriate matters of record, and the argument of counsel, concludes as follows with regard to Plaintiff's Motion for Summary Judgment regarding the First and Ninth Claims for Relief contained in the Verified Complaint:[1]

---

[1] The Court will address the Second – Eighth Claims for Relief in the Verified Complaint in a separate opinion and order.

A. FACTUAL[2] AND PROCEDURAL BACKGROUND.

1. On March 1, 2013, Plaintiff became a partner in the law firm of Lewis, Deese, Nance, Briggs & Hardin, LLP (the "Firm"). Richard M. Lewis ("Lewis"), Renny W. Deese ("Deese"), James B. Nance, Jr. ("Nance"), and John G. Briggs, III ("Briggs") were Plaintiff's partners. The Firm did not have a written partnership agreement. Deese told Plaintiff she would receive a $10,000.00 per month draw and that she would have to pay a $45,000.00 "buy-in" to the partnership. The buy-in would be deducted from her monthly draw in installments of $1,500.00 until paid in full. There also apparently was a profit distribution made at the end of each year in equal, pro rata, shares to each partner.

2. The partners implemented a new profit distribution plan effective January 1, 2014. The partners agreed to keep $100,000.00 in the firm's operating account, and at the end of each quarter distribute any amount in excess of $100,000.00 in the operating account. Under the new plan, distributions were based on individual revenues generated by each partner.[3] For the first three quarters of 2016, a profit distribution was made to each partner based on a pro-rata percentage determined by dividing the gross revenues collected on the partner's work during the quarter by the total gross revenues collected by the Firm on all work during the quarter.[4] Defendants apparently contend that the partners agreed that a decision on whether to pay the profit distribution would be made after each quarter.[5] Plaintiff disputes this contention and claims that the partners placed no contingencies on the payment of the distributions. This dispute of fact makes it impossible, at this time, to determine

---

[2] The parties' briefs are virtually bereft of any citation to the evidence in the record, insubstantial as it is, which has made the Court's task of ruling on the Plaintiff's Motion for Summary Judgment extremely difficult.

[3] Hardin Dep. pp. 62, 68, 69, 93, and 95; Defs.' Resp. to Pl.'s First Req. for Admissions nos. 4 and 5 (filed on August 10, 2015).

[4] Defs.' Resp. to Pl.'s First Req. for Admissions nos. 4 and 5 (filed on August 10, 2015).

[5] *Id.*

whether Plaintiff was entitled to a payment of a profit distribution for the fourth quarter of 2014.

3.      It is undisputed that Plaintiff generated the highest level of gross revenues during the first three quarters of 2014.  Plaintiff received her profit distributions for the first, second, and third quarters of 2014, and has not disputed that she received the appropriate amount for each of these quarters.  Defendants contend that no profit distribution was paid to the partners for the fourth quarter of 2014.  During December 2014, January 2015, and February 2015, Plaintiff requested an explanation for why the profit distribution was not paid and records from which she could determine any distribution she was owed.  Defendants did not provide her with an explanation or the records.

4.      On February 16, 2015, Plaintiff notified her partners that she was withdrawing from the Firm effective March 1, 2015.  Defendants do not dispute that Plaintiff request effected a dissolution of the Firm as a matter of law pursuant to N.C. Gen. Stat. § 59-61.  She requested payment of the fourth quarter 2014 profit distribution and repayment of her capital account.  On February 25, 2015, Plaintiff and her paralegal were denied access to the Firm's network and computer files.  On February 26, 2015, Plaintiff sent an email to the partners again requesting payment of her fourth quarter profit distribution and her capital account, and requesting that the Firm be dissolved.

5.      It is undisputed that since February 16, 2015, Lewis, Deese, Nance, and Briggs have continued to practice law as "Lewis, Deese, Nance and Briggs" ("LDNB").[6]  LDNB, however, did not establish new bank accounts for LDNB or attempt to segregate the Firm's funds or finances from those of LDNB in order to account for the dissolution and distribution to Plaintiff. Rather, LDNB has continued to use the Firms' bank accounts and the funds

[6] Defs.' Answer and Counterclaim ¶ 8.

therein to operate LDNB. On March 24, 2015, LDNB filed a Certificate of Amendment with the North Carolina Department of the Secretary of State changing the name of the firm to LDNB.

6. Following her resignation, Plaintiff attempted to obtain from the Firm financial records, documents, and information for purposes of the settling of accounts between the partners and determination of any distribution to which she may be entitled from the Firm. The Firm did not provide Plaintiff with all of the records, documents and information that she believed were necessary for the settling of accounts and determination of any distribution.

7. On May 26, 2015, Plaintiff filed this action against the Firm, her individual former partners, and LDNB, operating as a de facto partnership. In the Complaint, Plaintiff makes the following "Claims for Relief:" (1) declaratory judgment, (2) breach of partnership agreement, (3) breach of fiduciary duties, (4) conversion, (5) accounting pursuant to G.S. § 59-52, (6) constructive fraud, (7) constructive trust, (8) unfair and deceptive trade practices, and (9) dissolution and winding up pursuant to G.S. § 59-59, *et seq.*

8. On June 29, 2015, Plaintiff filed a motion seeking an order prohibiting Defendants from making disbursements from the Firm's operating bank account and requiring Defendants to repay to the operating account all distributions and disbursements made since February 26, 2015. Defendants filed a response to the motion in which they admitted that they have not segregated the accounts and finances of the Firm and LDNB, but contended that enjoining them from accessing the operating account would effectively end Defendants' ability to practice law and could cause harm to ongoing client matters. At the hearing, the Court indicated to counsel that while it was sympathetic to Plaintiff's concerns regarding the financial status of the Firm, it was not inclined to cut-off LDNB's ability to access the operating account. The Court noted that the information provided to the

Court tended to show that LDNB, which is operating using the Firm's funds, was a viable and ongoing business entity that would have sufficient funds to pay any distribution that may be owed to Plaintiff following the winding up of the Firm's affairs. Accordingly, the Court suggested to the parties that it preferred to issue an order pursuant to the statutory authority granted by Chapter 59 of the General Statutes and its equitable authority that would facilitate an accounting of the Firm's financial condition, a settling of accounts between the partners, and a determination of any distribution to which Plaintiff was entitled. The parties agreed that the Court had the authority to do so, and provided input into the contents of the order.

9. On July 14, 2015, the Court issued an order ("July 14 Order") that required, *inter alia*, (a) Defendants arrange a meeting between Plaintiff's accountant and the Firm's accountant for "the purposes of allowing the accountants to determine any distribution that may be owed to Plaintiff as a result of the dissolution of the Firm pursuant to G.S. § 59-70 (the "Joint Accounting")", (b) Defendants to make available to Plaintiff's accountant any records, documents, or information that Plaintiff's accountant requested, and (c) Defendants to provide Plaintiff with electronic access to the Firm's bank accounts. The July 14 Order also prohibited Defendants from making rent payments to themselves, and from making certain disbursements from the Firm's operating and trust accounts.

10. On October 2, 2015, Plaintiff filed Motions for an Order to Show Cause and for the Appointment of a Receiver ("Motion to Show Cause") alleging that Defendants have failed to comply with a number of provisions of the July 14 Order. In response, Defendants argued that any deviation from the mandates of the July 14 Order were not intentional or willful, and that, to the extent possible, Defendants' noncompliance had been resolved. Nevertheless, Plaintiff maintained that she had not yet received all of the information

required by the July 14 Order and necessary for the determination of any distribution from the Firm to which she may be entitled.

11.     After hearing on the Motion to Show Cause, the Court concluded that the facts did not support a finding of civil contempt and that the appointment of a receiver was not warranted at that time. Nevertheless, the Court concluded that nothing short of unfettered access to the books and records of the Firm would resolve this dispute. The parties were advised of this conclusion at the hearing, and both parties indicated that they would work cooperatively to provide Plaintiff this access. Additionally, Defendants agreed to make Arlene Johnson, office manager of LDNB, available as necessary to assist Plaintiff or her accountant, Florence Black, in obtaining this access. On October 16, 2015, the Court issued an Order on Motion to Show Cause reflecting these conclusions and obligations.

12.     Despite the attempts to assist the parties in reaching a resolution of the issues surrounding the dissolution of the Firm and distribution to Plaintiff, the parties have been unable to reach agreement.

13.     On April 14, 2016, Plaintiff filed Plaintiff's Motion for Summary Judgment. Plaintiff seeks an order granting summary judgment in her favor as to all nine claims raised in the Complaint. Defendants have filed a response opposing Plaintiff's Motion for Summary Judgment. From the sparse evidence filed by the parties regarding Plaintiff's Motion for Summary Judgment and from information provided by counsel at the hearing on the motion, it is apparent that parties conducted very limited discovery. Plaintiff has provided almost no citation to record evidence in support of her motion, and has failed to present sufficient argument in support of summary judgment as to most of her claims. Defendant also has failed to present sufficient argument in support of its opposition to Plaintiff's Motion for Summary Judgment, and has not pointed the Court to evidence in the record from which it could determine whether or not disputes of material fact exist. Nevertheless, the facts that

are undisputed at this time permit the Court to decide Plaintiff's request for summary judgment as to her first claim for declaratory judgment and as to her ninth claim for dissolution and winding up. With regard to these two claims, Plaintiff's Motion for Summary Judgment requests that the Court appoint a receiver or referee to conduct a dissolution and winding up of the Firm. In the interest of expediting the appointment of a receiver to dissolve and wind up the Firm partnership, the Court addresses these two claims in this Opinion and Order. The Court will address Plaintiff's remaining claims in a separate order.

B. ANALYSIS.

14. Plaintiff has moved for summary judgment in her favor as to her First and Ninth Claims for Relief pursuant to Rule 56(a). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that any party is entitled to judgment as matter of law." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012). An issue is "material" if its "resolution . . . is so essential that the party against whom it is resolved may not prevail." *McNair v. Boyette*, 282 N.C. 230, 235, 192 S.E.2d 457, 460 (1972). The moving party bears "the burden of clearly establishing lack of a triable issue" to the trial court. *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182, 711 S.E.2d 114, 116 (2011). The moving party may meet this burden by "proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would have been barred by an affirmative defense." *Variety Wholesalers, Inc.*, 365 N.C. at 523, 723 S.E.2d at 747.

15. In her First Claim for Relief, Plaintiff alleges "issues exist with respect to the rights and obligations of the parties with respect to the dissolution and winding up of the affairs of [the Firm] and distribution of its assets," and seeks a declaration from this Court pursuant to G.S. § 1-253, et seq., "to settle the rights and obligations of the respective parties

regarding these matters."[7]  Under North Carolina law, a declaratory judgment is a statutory remedy that grants a court the authority to "declare rights, status, and other legal relations" when an "actual controversy" exists between parties to a lawsuit. G.S. § 1-253; *Pine Knoll Shores v. Carolina Water Serv., Inc.*, 128 N.C. App. 321, 494 S.E.2d 618 (1998).  Summary judgment may be granted on a claim for declaratory judgment if there remain no issues of material fact and either party is entitled to relief as a matter of law. *Smith v. Marez*, 217 N.C. App. 267, 270, 719 S.E.2d 226 (2011) (internal citation omitted).

16.     It is undisputed that on February 16, 2015, Plaintiff requested dissolution of the Firm. There being no prior agreement between the partners regarding dissolution, the provisions of G.S. § 59-61(1)(b) applied, and Plaintiff's request caused a dissolution of the Firm as a matter of law on February 16, 2015.[8] In addition, the dissolution of the Firm entitled Plaintiff to a settling of accounts between the partners and distribution of firm assets as of February 16, 2015, pursuant to G.S. § 59-70.

17.     In her first claim, Plaintiff also requests a declaration regarding the parties respective rights on the winding up of the Firm as provided for in G.S. § 59-67.  A winding up is distinct from a dissolution of the partnership. G.S. § 59-59 ("The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business."). Only upon the completion of a winding up can a North Carolina general partnership truly be said to terminate. What exactly constitutes a winding up where, as here, LDNB has continued to

---

[7] Compl. ¶¶ 53-56.
[8] G.S. § 59-61(1)(b) provides dissolution is caused "[b]y the express will of any partner when no definite term or particular undertaking is specified." Neither party contends, nor is there any evidence before the Court, that the Firm was established for a definite term or only to engage in a particular undertaking.

operate much of the Firm's prior business, however, is not clearly addressed in North Carolina's Uniform Partnership Act, or in this State's appellate case law.

18.     To resolve this issue, the Court finds guidance from a variety of other jurisdictions that have addressed this issue, all interpreting nearly identical statutory language as that adopted in this State. When presented with this question, a number of courts have concluded that a "winding up" is technically effected when an outgoing partner is compensated for their interest in the dissolving partnership, without any strict requirement that the dissolving partnership be liquidated. *See e.g. Thomas v. Price*, 718 F.Supp 598 (S.D. Tex. 1989). Similarly, other courts have concluded that a technical "winding up" can occur when a newly constituted partnership simply takes over the assets of the dissolving partnership. *See Wilzig v. Sisselman*, 442 A.2d 1021 (1982). Further, a leading treatise on partnership law under the Uniform Partnership Act notes that, notwithstanding its frequent use as a synonym for liquidation, " 'winding up' does appropriately describe an extended process of settling the interests of the partners in the dissolved firm even if the partnership is reconstituted, as in a professional firm that must wind up its work in process." 2 A. Bromberg & L. Ribstein, <u>Bromberg and Ribstein on Partnership</u> § 7.08(a) (2015). Indeed, even our supreme court appears to have concluded that a winding up does not necessarily require liquidation, holding that the right to apply partnership assets to any obligation does not arise until either "the affairs of the partnership have [been] wound up, or the share of a partner ascertained." *Casey v. Grantham*, 239 N.C. 121, 125, 79 S.E.2d 735, 738 (1954). Similarly, in interpreting section 38(1) of the Uniform Partnership Act, the liquidation right noted above and codified at G.S. § 59-68, courts have concluded that, in an appropriate case, a buyout of the withdrawing partner's interest may be more appropriate than ordering a liquidation of the dissolving partnership. *See* A. Bromberg & L. Ribstein, <u>supra</u>, § 7.11(f) (collecting cases). These cases strongly suggest that a partnership, under appropriate

circumstances, can be dissolved and wound up consistent with the terms of the Uniform Partnership Act without a requirement that the partnership's assets be liquidated.

19.     Based on the above, the Court concludes that, even if entitled to a winding up, Plaintiff is not necessarily entitled to compel the liquidation of the assets of the Firm through a winding up. Instead, it appears to the Court that the facts at bar present precisely the type of scenario that warrants allowing an accounting and a buyout of Plaintiff's interest in the Firm in lieu of liquidation.[9] As the Court has recognized in its prior orders, the partners in the Firm were practicing together and maintaining a viable legal practice long before Plaintiff became a partner.  In addition, LDNB has continued to operate a viable legal practice since Plaintiff dissolved the Firm, albeit without taking the steps that should have been taken to assure that the Firm's assets and liabilities were segregated from the assets and liabilities of the new partnership.  There also is no dispute that LDNB has active client relationships and is representing those clients in pending matters. Given these facts, and particularly the potential disruption to the representation of LDNB's current clients that would result from a liquidation of the Firm's assets, the Court concludes, in its discretion, that the Firm should be "wound up" in that there should be an accounting and settling of accounts between the partners as of February 16, 2015, but that the now existing firm should be considered to have been formed as a new partnership effective February 17, 2015, and be permitted to continue as new LDNB.[10]

---

[9] Defendants have requested that the winding up be conducted in exactly this manner.  *See* Defendants' Response to Plaintiff's First Interrogatories, First Set of Requests for Production of Documents, and First Set of Requests for Admissions, filed with the Court on August 10, 2015.

[10] As set out below, this will be accomplished by the Receiver's settlement of partnership accounts as of February 16, 2015, which will permit Plaintiff to receive any distribution to which she may be entitled without necessitating the immediate payment of all current debts or long-term debts or liquidation of firm assets that are needed for LDNB to continue to practice.

20.     Accordingly, the Court concludes that there are no genuine issues of material fact and that judgment should be GRANTED as to Plaintiff's First Claim for Relief for a declaratory judgment declaring that the Firm was dissolved effective February 16, 2015, that the Firm should be wound up as of February 16, 2015, and that Plaintiff is entitled to a settlement of accounts between the partners and a distribution of firm assets as of February 16, 2015, pursuant to G.S. § 59-70 and any other applicable provisions of the North Carolina Uniform Partnership Act ("the Act"). *See Casey v. Grantham*, 239 N.C. 121, 125, 79 S.E.2d 735, 738 (1954) (Plaintiff entitled to partnership accounting and determination of any distribution); *Dean v. Manus Homes, Inc.*, 143 N.C. App. 549, 553-54, 546 S.E.2d 160, 162-63 (2001) (Partner in dissolved partnership entitled to accounting and distribution of assets).

21.     In her Ninth Claim for Relief, Plaintiff alleges that she "is entitled to the dissolution and winding up of [the Firm] and its affairs pursuant to, *inter alia*, N.C. Gen.Stat. § 59-59 et seq.".[11]  Again, the facts necessary to resolution of this claim are not in dispute.  As discussed above, the partnership constituting the Firm was dissolved as a matter of law on or about February 16, 2015 by operation of the statute. Accordingly, although the Act authorizes a court to decree a dissolution of a partnership, the Court does not believe that it is necessary to do so here.  Plaintiff is, however, entitled to a winding up of the Firm and a settling of the partnerships accounts. Accordingly, the Court concludes that Plaintiff's Motion for Summary Judgment as to Plaintiff's First Claim for Relief should be GRANTED.  The Firms business shall be wound up and the partnership accounts settled pursuant to the order regarding the appointment of the Receiver below.

---

[11] Compl. ¶¶ 91-92.

C.  ORDER APPOINTING RECEIVER.

22.     Under G.S. § 1-501, this Court has authority to appoint receivers.  A receiver may be appointed prior to a judgment when the moving party "establishes an apparent right to property which is the subject of the action and in the possession of an adverse party, and the property or its rents and profits are in danger of being lost, or materially injured or impaired."  G.S. § 1-502(1).  Further, "[c]ourts of equity have original power to appoint receivers and to make such orders and decrees with respect to the discharge of their trust as justice and equity may require." *Lambeth v. Lambeth*, 249 N.C. 315, 321, 106 S.E.2d 491, 495 (1959) (citation omitted).  Appointment of a receiver is only appropriate "where there is no other safe or expedient remedy," *Murphy v. Murphy*, 261 N.C. 95, 101, 134 S.E.2d 148, 153 (1964) (citation omitted), and "should be utilized only with attendant 'caution and circumspection.'" *Lowder v. All Star Mills, Inc.*, 301 N.C. 561, 577, 273 S.E.2d 247, 256 (1981). Nevertheless, the trial court's appointment of a receiver is within its sound discretion, *Barnes v. Kochhar*. 178 N.C. App. 489, 500, 633 S.E.2d 474, 481 (2006).

23.     The evidence before the Court establishes that Plaintiff has an apparent right to partnership property and assets which are the subject of this lawsuit and are currently in the possession of Defendants.  The Court concludes that Plaintiff has established that the partnership's assets are in danger of being lost or impaired absent appointment of a receiver to oversee an accounting, settlement of accounts between the partners, and determination of any distribution.  Based upon the course of this case, including the parties' failure to come to a resolution despite the Court's prior orders, the Court further includes that no is no adequate remedy short of appointment of a receiver that will accomplish the dissolution and winding up of the Firm.

24. Accordingly, for good cause shown the Court APPOINTS as Receiver for the Firm:

> Craig A. Adams, CPA, Partner
> Clifton Larson Allen LLP
> 3801 Barrett Drive, Suite 201
> Raleigh, NC 27609
> Direct 919-239-8520
> Craig.adams@CLAconnect.com

The Receiver shall be compensated at an hourly rate of $265.00 for time reasonably expended on services as the Receiver, and shall require a pre-paid retainer fee of $10,000.00 to be applied against billings. LDNB shall be responsible for paying the Receiver's fees and expenses following submission and approval of such fees by the Court. LDNB shall contact the Receiver immediately to initiate the accounting called for by the Order, and shall pay the $10,000 retainer fee no later than Monday, August 1, 2016.

25. The Receiver shall have authority, and all powers necessary, to prepare an accounting that determines the settling of accounts between the partners of the Firm and any distribution to be made to Plaintiff as of February 16, 2015, pursuant to the provisions of the North Carolina Uniform Partnership Act. Unless otherwise noted herein, the Receiver may exercise the authority granted in the Order without further order of the Court.

26. In addition to the general authority to prepare the accounting called for in this Order, the Receiver shall have the following specific authority and powers:

   a. The Receiver shall immediately take possession and control of the Firm's books, records, accounts, or other information maintained by or on behalf of the Firm as is necessary to perform the duties assigned herein. This includes, but is not limited to, all of the organization's financial, accounting, tax, and banking records. The Receiver may determine, in his sole discretion, the place

at which the records will be maintained and may establish any rules or procedures deemed necessary to ensure the preservation of those records.

b.  The Receiver shall have the authority to inspect and review the books, records, accounts, or other information maintained by or on behalf of the Firm at such times and at such places that he determines in his sole discretion.

c.  Upon entry of this Order, the Firm and the individual partners of the Firm shall cooperate fully with the Receiver in the performance of his duties, including making themselves, members of the Firm's staff, and the Firm's outside accountants and other professional advisors, available to the Receiver upon request.

d.  The Receiver shall make such an accounting of the Firms assets and liabilities as of February 16, 2015, as is necessary to settle the accounts between the partners and determine any distribution to which Plaintiff was entitled as of February 16, 2015 pursuant to G.S. § 59-70.  In making the accounting, the Receiver shall use generally accepted accounting principles, and rely on his professional experience and judgment.  The Receiver shall also prepare an alternative accounting that assumes Plaintiff had been paid a profit distribution for the fourth quarter of 2014 as described in paragraph 2 of this Opinion and Order (and assuming the payment had been made prior to February 16, 2015).

e.  If there were assets subject to distribution under G.S. § 59-70, the Receiver shall determine and recommend to the court the amount in which those assets should be distributed under both accountings.  If there are assets available for distribution to the partners of the firm as of the date of dissolution, the

Receiver shall determine and recommend to the court the amount in which those assets should be distributed.

f.  The Receiver shall report his findings to the Court as soon as practicable and may apply to this Court, with notice to counsel for Petitioner and counsel for Intervenors, for such orders as may be necessary and appropriate to carry out the mandate of this Court.

g.  In undertaking and performing this engagement, the Receiver is authorized to engage the professional services of other members of his accounting firm, at their customary and usual hourly rates, as he reasonably determines are needed without need to seek the approval of this Court.

h.  If the Receiver believes it is necessary to retain additional accountants, attorneys, or other professionals outside of his accounting firm in the course of performing his duties under this Order, the Receiver shall make a written request to the Court to retain such attorneys or other professionals with a copy of such request to counsel for Petitioner and counsel for Intervenors.[12] The request shall describe the legal or other issues with which the Receiver needs assistance, identify the attorney or other professional the Receiver proposes to retain, and provide an estimate of the cost for retaining such services.

27.  During pendency of this civil action or unless otherwise ordered, all parties are directed not to destroy, remove, alter or obscure any of the financial or otherwise relevant records of the Company.

28.  This Order shall remain in force and effect until further order of this court.

---

[12] For the purpose of complying with this section, an informal request by email is sufficient.

This the 21st day of July, 2016.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
  for Complex Business Cases